UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-CIV-61150-DIMITROULEAS/SNOW

BRIAN FELDMAN and DANIEL
DICKERSON, individually, and on behalf of
a class of similarly situated individuals,

      Plaintiffs,

v.

BRP US, INC., BOMBARDIER
RECREATIONAL PRODUCTS, INC., and
BRP INC.,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BOMBARDIER RECREATIONAL PRODUCTS INC.'S MOTION TO DISMISS, MOTION TO STRIKE

      **THIS CAUSE** is before the Court on Defendant Bombardier Recreational Products Inc.'s

Motion to Dismiss, Motion to Strike [DE 19] (the "Motion").  The Court has carefully reviewed

Plaintiffs' Complaint [DE 1], the Motion, Plaintiffs' Response in Opposition [DE 29], and

Defendant's Reply [DE 33], and is otherwise fully advised in the premises.

## I.    Background[1]

      Plaintiffs in this case are Brian Feldman and Daniel Dickerson.  [DE 1] at ¶¶ 8, 17.  They

are, respectively, citizens of Florida and New York.  *Id.* ¶¶ 8, 17.  Defendant is Bombardier

Recreational Products, Inc. ("Bombardier"), a Canadian corporation with its principal place of

---

[1] All facts set forth in the background are according to the allegations of the Complaint [DE 1], which the Court assumes as true for purposes of this Motion.

business in Quebec, Canada.  *Id.* ¶ 27.[2]  Bombardier designs, manufactures, warrants, sells, distributes, and markets personal watercraft ("PWC") throughout the United States.  *Id.* ¶ 27.

On or about August 28, 2015, Mr. Feldman purchased a Bombardier PWC—specifically, a 2015 Sea-Doo GTI 130 SI—from West Coast Power Sports, authorized Sea-Doo retailer in Clearwater, Florida.  *Id.* ¶ 9.  On May 30, 2016, Mr. Feldman was operating his PWC in a "no wake" zone when, all of a sudden, the PWC began a loud continuous beep indicating a high exhaust temperature.  *Id.* ¶ 10.  Mr. Feldman then turned off the PWC, waited a minute, and then tried to restart the PWC in neutral, only to find that the PWC would only operate for a few minutes before shutting off.  *Id.*  Though Mr. Feldman did not know it at the time, the PWC's exhaust resonator melted and began taking on water; as a result, Mr. Feldman's PWC sank in an alligator-infested canal.  *Id.* ¶ 11.

Mr. Feldman retrieved his PWC from the canal and had it towed to West Coast Power Sports, where he was told that a defect in the PWC's exhaust resonator caused it to melt.  *Id.* ¶ 12.  Despite the PWC still being under a limited warranty and emission-related warranty, Mr. Feldman was advised by West Coast Power Sports that the repairs would not be covered under warranty.  *Id.* ¶ 13.  Around June 11, 2016, Mr. Feldman contacted Bombardier to inform them of the exhaust resonator defect and requested that it be repaired under warranty.  *Id.* ¶ 14. Bombardier responded a few days later, advised Mr. Feldman that the repairs would not be covered under warranty, and refused to provide further assistance.  *Id.* ¶ 15.

Mr. Dickerson's story is a similar one.  On or about June 29, 2016, he purchased two 2016 Sea-Doo S155 PWCs from Filer's Powersports, an authorized Sea-Doo retailer in Macedon, New York.  *Id.* ¶ 18.  On June 1, 2016, while operating his PWCs for the first time,

---

[2] In addition to Bombardier, Plaintiffs initially named as defendants BRP US, Inc. and BRP, Inc.  DE 1 ¶¶ 26-28. One month after initiating this litigation, Plaintiffs voluntarily dismissed BRP US, Inc. and BRP, Inc. without prejudice, leaving Bombardier as the only remaining defendant.  DE 12.

one of them began to sound a high exhaust temperature warning and began to sink minutes later. *Id.* ¶ 19.  To Mr. Dickerson's surprise, his PWC's exhaust resonator had melted and began taking on water.  *Id.* ¶ 20.  As a result the PWC sank.  Id.

Mr. Dickerson salvaged his PWC and had it towed to Filer's Powersports.  There, a service technician informed his of the exhaust resonator defect and that the repairs would not be covered under warranty.  *Id.* ¶¶ 21-22.  Not long after, he wrote to his dealer—which was forwarded to Bombardier—describing his experience and requesting that the defect be repaired under warranty.  *Id.* ¶ 23.  On August 16, 2016, a Bombardier employee emailed Mr. Dickerson, advised him that the repairs would not be covered under warranty, and refused to provide further assistance.  *Id.* ¶ 23.

Both Plaintiffs state that, when they purchased their PWC, they consulted with Bombardier's sales representatives and reviewed their sales and marketing materials.  *Id.* ¶¶ 16, 25.  Neither the sales representatives nor the written materials disclosed that the PWC suffered from an exhaust resonator defect.  *Id.* ¶¶ 16, 25.  Had he known of the defect, Plaintiffs would not have purchased the PWC, or would have paid less for it.  *Id.* ¶¶ 16, 25.

On June 7, 2016, Plaintiffs filed the instant Class Action Complaint against Bombardier, alleging that the exhaust system installed in all 2010 to 2016 Sea-Doo PWCs (the "Class PWCs") contains a defect that causes the exhaust resonator to melt and the Class PWCs to take on water.  *Id.* ¶¶ 1, 38.  The defect, Plaintiffs allege, was present in all Class PWCs when they left the manufacturing facility.  *Id.* ¶ 39.  And because the exhaust resonator defect was caused by a defect in material, it should be covered by the limited warranty and emissions related that comes with all the Class PWCs, a warranty that Bombardier has refused to honor.  *Id.*  The limited warranty provides that Bombardier warrants its PWC "from defects in material and

workmanship" for twelve consecutive months for private use owners, beginning on the date of

deliver to the first retail customer, or the date the product is first put into use, whichever comes

first.  DE 19-1 at 178-79.  The limited warranty contains the following "LIMITATIONS OF

LIABILITY," which reads, in relevant part:

> THIS WARRANTY IS EXPRESSLY GIVEN AND ACCEPTED IN LIEU OF ANY
> AND ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING
> WITHOUT LIMITATION ANY WARRANTY OF MERCHANTABILITY OR
> FITNESS FOR A PARTICULAR PURPOSE.  TO THE EXTENT THAT THEY
> CANNOT BE DISCLAIMED, THE IMPLIED WARRANTIES ARE LIMITED IN
> DURATION TO THE LIFE OF THE EXPRESS WARRANTY.  INCIDENTAL AND
> CONSEQUENTIAL DAMAGES ARE EXCLUDED FROM COVERAGE UNDER
> THIS WARRANTY.

*Id.* at 178.  Certain exclusions are not contained within the limited warranty, including: damage

caused by failure to provide proper maintenance and/or storage, as described in the Operator's

Guide; damage resulting from accident or submersion; damage from cooling system or jet pump

blockage by foreign material; and incidental or consequential damages, including towing,

storage, rental, inconvenience, etc.  *Id.* at 178-79.

The emissions-related warranty provides that Bombardier warrants that the PWCs'

engine, including all parts of the emission control system, meets two conditions:

> 1. It is designed, built, and equipped so it conforms at the time of sale to the ultimate
> purchaser with the requirements of 40 CFR 1045 and 40 CFR 1060.

> 2. It is free from defects in materials and workmanship that may keep it from meeting the
> requirements of 40 CFR 1045 and 40 CFR 1060.

*Id.* at 182.  The exhaust resonator is not listed as a component covered by the emissions-related

warranty.  *Id.* at 183.

Plaintiffs allege that the exhaust-resonator defect has produced numerous consumer

complaints, forced Plaintiffs and the owners to Class PWCs to incur out-of-pocket costs to cover

repairs, all the while subjected them to unreasonable safety hazards.  DE 1 ¶¶ 3, 39-41.  Plaintiffs

further allege that Bombardier has known about and actively concealed the exhaust resonator defect, contrary to its duty to disclose the defect and associated repairs to the Class PWCs' owners.  *Id.* ¶¶ 2, 4-6, 42-44.

Plaintiffs' Class Action Complaint seeks relief on behalf of a nationwide class of all current and former owners of Class PWCs, a Florida subclass consisting of all nationwide class members who purchased Class PWCs in Florida, and a New York subclass of all nationwide class members who purchased Class PWCs in New York.  *Id.* ¶¶ 47-48.  The Class Action Complaint raises claims for breach of express warranty, breach of implied warranty, violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*, violations of the New York Consumer Protection Act ("NYCPA"), N.Y. Gen. Bus. Law § 349, and unjust enrichment. *Id.* ¶ 7.

Bombardier now moves to dismiss the Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2) for lack personal and subject-matter jurisdiction, and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  [DE 19].  Bombardier also asserts that portions of Plaintiffs' class allegations should be stricken.  *Id.*

## II.    Jurisdiction

A federal court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007); *see Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 93-102. Regarding this Court's subject-matter jurisdiction, Bombardier argues that Plaintiffs lack Article III standing to assert claims on behalf of a nationwide class and relating to PWCs that they did

not purchase.  As to personal jurisdiction, Bombardier says that it cannot be haled into court in Florida for the claims raised by non-Florida residents.  And as a result, Bombardier contends, Plaintiffs' claims on behalf of the putative nationwide class and New York subclass must fall out of the case.

While questions of subject-matter jurisdiction are customarily considered first, "there is no unyielding jurisdictional hierarchy." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999).  Consequently, "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem*, 549 U.S. at 431 (quoting *Ruhrgas*, 526 U.S. at 585).  Because Bombardier's personal jurisdiction arguments are more novel and far-reaching, the Court will exercise its discretion to address them first.

**A.  Personal Jurisdiction**

*1.  Principles*

In the ordinary case, federal courts follow state law in determining the bounds of their jurisdiction over persons.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014); *see* Fed. R. Civ. Proc. 4(k)(1)(A) (service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located").  So a federal district court in Florida "may exercise personal jurisdiction over a nonresident defendant, to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010) (internal quotation marks omitted).  Bombardier argues that due process does not permit this Court to exercise personal jurisdiction over claims that have no connection to Florida.

"A state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011). Personal jurisdiction falls under two rubrics: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Id.* at 919. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.*; *see Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945). For a corporation, the paradigm forum for general jurisdiction is its place of incorporation or principle place of business. *See Daimler*, 134 S. Ct. at 761. Plaintiffs concede that Bombardier, a Canadian corporation, is not "at home" in Florida or any other state. DE 29 at 7.

The Court's inquiry, then, must focus on specific jurisdiction. A state court can exercise specific jurisdiction when "the suit arises out of or relates to the defendant's contacts with the forum." *Daimler*, 134 S. Ct. at 734 (internal quotation marks omitted). Stated differently, there must be "an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. 919 (brackets and internal quotation marks omitted). Specific jurisdiction is therefore "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (internal quotation marks omitted).

The specific jurisdiction determination "consider[s] a variety of interests," including "the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137

S. Ct. 1773, 1780 (2017) (internal quotation marks omitted).  The "primary concern," however, is "the burden on the defendant."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).  "Assessing this burden obviously requires a court to consider the practical problems resulting from litigating in the forum, but it also encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question."  *Bristol-Myers Squibb*, 137 S. Ct. at 1780.  And while "[t]he States retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts.  The sovereignty of each State implies a limitation on the sovereignty of all its sister States."  *Id.* (alternations omitted) (quoting *World-Wide Volkswagen*, 444 U.S. at 293).  This federalism interest can, in some instances, "be decisive."  *Id.*

       *2.  Application*

According to Bombardier, this Court lacks specific jurisdiction over Bombardier with regard to the putative nationwide class, as well as Plaintiff Dickerson and the putative New York sub-class.  This conclusion follows, Bombardier says, from the Supreme Court's recent decision in *Bristol-Myers Squibb v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773.

       *a.*  Bristol-Myers Squibb

In *Bristol-Myers Squibb*, a group of plaintiffs—consisting of 85 California residents and 592 residents from 33 other States—filed eight separate suits as a mass-tort action in California state court, alleging injuries caused by the pharmaceutical drug Plavix.  133 S. Ct. at 1778.  Critically, "[t]he nonresident plaintiffs did not allege that they obtained Plavix through California physicians or from any other California source; nor did they claim that they were injured by Plavix or were treated for their injuries in California."  *Id.*  Applying "settled principles of regarding specific jurisdiction," the Supreme Court held that the California courts could not

exercise specific jurisdiction of the nonresidents' claims because there was no "connection between the forum and the specific claims at issue." *Id.* at 1781.   "The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents"—was insufficient to establish person jurisdiction.  *Id.* That was so because "'a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction.'"  *Id.* (ellipsis in original) (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014)).

### b.   The New York Sub-Class

In Bombardier's view, this case is on all fours with respect to Plaintiff Dickerson, a New York resident who seeks to represent a class of persons who purchases a 2010 to 2016 Sea-Doo PWC in New York.  The Court agrees.  As in *Bristol-Myers Squibb*, there is no connection between Mr. Dickerson and Florida.  He did not purchase his PWC in Florida, nor did his PWC manifest its defect in Florida.  "Nothing in [*Bristol-Myers Squibb*] suggests that it does not apply to named plaintiffs in a putative class action; rather, the Court announced a general principle— that due process requires a 'connection between the forum and the specific claims at issue.'  That principle applies with equal force whether or not the plaintiff is a putative class representative." *Green v. Mizuho, Ltd.*, ___ F. Supp. 3d ___, 2017 WL 7410565, at *4 (N.D. Ill. Dec. 11, 2017) (citation omitted) (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1781); *see In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) ("The constitutional requirements of due process do[ ] not wax and wane when the complaint is individual or on behalf of a class.  Personal jurisdiction in class actions must comport with due process just the same as any other case."); William B. Rubenstein, 2 *Newberg on Class Actions* § 6:25 (5th ed.)

("A putative class representative seeking to hale a defendant into court . . . must have personal jurisdiction over that defendant just like any individual litigant must . . . .").

Like the claims of the nonresident plaintiffs in *Bristol-Myers Squibb*, Mr. Dickerson's claims arise from conduct that took place completely outside of the forum where he seeks to bring suit.  It follows that this Court cannot exercise specific jurisdiction over his claims.  This conclusion accords with the decisions of other district courts to have addressed claims of nonresident class representatives in the wake of *Bristol-Myers Squibb*.  *See Molock v. Whole Foods Market, Inc.*, ___ F. Supp. 3d ___, 2018 WL 1342470, at *4-6 (D.D.C. Mar. 15, 2018); *Green*, 2017 WL 7410565, at *3-6.  Mr. Dickerson's claims must therefore be dismissed.  And because Mr. Dickerson is the only Plaintiff seeking to represent the New York subclass, those subclass claims must be dismissed as well.

### c.   The Nationwide Class

Bombardier further argues that this Court cannot exercise specific jurisdiction over the proposed nationwide class of Sea-Doo purchasers.  In Bombardier's view, *Bristol-Myers Squibb* requires the dismissal of all putative non-Florida class members from this case.

The Court disagrees.  *Bristol-Myers Squibb* was a mass action, not a class action.[3]  There are meaningful differences between the two.  And these differences have persuaded other district courts to reject efforts to expand *Bristol-Myers Squibb* to the context of nationwide class actions. *See, e.g.*, *Molock*, 2018 WL 1342470, at *6; *Sanchez v. Launch Technical Workforce Solutions, LLC*, ___ F. Supp. 3d ___, 2018 WL 942963, at *1 (N.D. Ga. Feb. 14, 2018); *In re Chinese-Manufactured Drywall Prods. Liability Litig.*, 2017 WL 5971622, at *12-14 (E.D. La. Nov. 30,

---

[3] The term "mass action," as used in this Order, does not refer to the mass action removal provisions of Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(11).  *See generally Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 746, 739-40 (2014).

2017); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017).

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  In order to justify this exception, the party seeking to maintain a class action must satisfy the due process safeguards contained in Federal Rule of Civil Procedure 23.  "[A] party must not only 'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a).  The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted) (quoting *Wal-Mart*, 564 U.S. at 350).

In a mass action, by contrast, "each plaintiff is a real party in interest, meaning that each plaintiff is personally named and required to effect service." *Sanchez*, 2018 WL 942963, at *1; *see Bristol-Myers Squibb*, 137 S. Ct. at 1778 (reviewing the claims of the non-resident plaintiffs on a motion to quash service of summons).  Not so in class actions, where "[n]onnamed class members . . . may be parties for some purposes and not for others." *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002); *see Sanchez*, 2018 WL 942963, at *1 (cataloging the ways in which unnamed class members are and are not considered a "party").  Rather, when it comes to class actions, "[t]he label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." *Devlin*, 536 U.S. at 10; *see also Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (describing the "argument that a nonnamed class member is a party to the class-action litigation *before the class is certified*" as "novel and surely erroneous" (internal quotation marks omitted)).

Against this backdrop, the Court concludes that due process permits the exercise of specific jurisdiction over nonresident putative class members in this case.  The Court therefore denies Bombardier's request to dismiss those nonresident putative class members on personal jurisdiction grounds.

### B.  Standing

#### 1.  Principles

Article III of the Constitution grants federal courts authority to adjudicate "Cases" and "Controversies."  U.S. Const. art. III, § 2.  "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so."  *DaimlerChrysler Corp. v. Cuno*, 547 U. S. 332, 341 (2006).  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).   The law of Article III standing "require[s] plaintiffs to allege such a personal stake in the outcome of the controversy as to justify the exercise of the court's remedial powers on their behalf."  *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) (alterations and internal quotation marks omitted).  In doing so, the "standing doctrine serves to prevent the judicial process from being used to usurp the powers of the political branches," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013), thereby ensuring that "the Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society," *DaimlerChrysler*, 547 U.S. at 341 (internal quotation marks omitted).  The Supreme Court's cases establish that the "irreducible constitutional minimum" of standing consists of three elements.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547.

### 2. Application

Bombardier raises two standing arguments. First, Bombardier says that Plaintiff Feldman lacks standing to assert claims on behalf of a nationwide class. And second, Bombardier asserts that Mr. Feldman lacks standing to assert claims relating to PWCs that he did not purchase. The Court considers each point in turn.

### a. The Nationwide Class

As noted, Plaintiff Feldman asserts claims under federal Magnuson-Moss Warranty Act, the Florida Deceptive and Unfair Trade Practices Act, and Florida common law. He does not claim a legal injury in any state other than Florida, nor does he allege an injury that arises under the laws of any other state. And Mr. Feldman's Magnuson Moss Act claim, the only federal claim at issue here, depends on state law. *See Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1231 (11th Cir. 2016) ("[C]laims under the Magnuson-Moss Act are . . . based on state law."); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986) (The Magnuson-Moss Act "calls for the application of state written and implied warranty law, not the creation of additional federal law.").

"It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) (internal quotation marks omitted). In accordance with this principle, named plaintiffs in class actions have, time

and again, been prohibited from asserting claims under a state law other than that which the plaintiff's own claim arises.  *See, e.g.*, *In re Takata Airbag Prods. Liability Litig.*, 2016 WL 1266609, at *4 (S.D. Fla. 2016) ("A named plaintiff lacks standing to assert legal claims on behalf of a putative class pursuant to state law under which the named plaintiff's own claims do not arise."); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1325 (S.D. Fla. 2010) (dismissing, for lack of standing, "all state statutory claims where no named plaintiff resides in the state from which the claim is asserted"); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) ("[T]he named plaintiffs cannot rely on unidentified persons within those states to state a claim for relief.  Class allegations that others suffered injuries giving rise to claims 'add . . . nothing to the question of standing.'" (ellipsis in original) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996))).

So too here.  Mr. Feldman's claims either arise under, or depend on, Florida law.  He therefore lacks standing to assert claims on behalf of class members who purchased Class PWCs outside of Florida.

### b.   Other PWCs

Plaintiff Feldman purchased a 2015 Sea-Doo GTI 130 SI.  DE 1 ¶ 9.  But he seeks to represent a class of all current and former owners of any 2010 to 2016 Sea-Doo PWC.  Id. ¶ 48.  Bombardier says that he lacks standing to represent purchasers of a make and model of Sea-Doo PWC that he did purchase himself.  In support of its argument, Bombardier points to this Court's decision in *Sanchez-Knutson v. Ford Motor Co.*, 2015 WL 11197772 (S.D. Fla. July 22, 2015).  In that case, the plaintiff, the purchaser of a Ford Explorer, sought to represent two classes: (1) a class of persons who purchased or leased a Ford Explorer in Florida (the "Florida Explorer Class"); and (2) a class of persons who purchases or leased not only Ford Explorers in Florida,

but the Ford Edge and the Ford MDX (the "Florida All Model Class"). *Id.* at *2. The Court held that "a named plaintiff in a consumer class action cannot raise claims relating to products which she herself did not purchase" and accordingly dismissed plaintiff's claims regarding the proposed Florida All Model Class. *Id.* at *5.

Mr. Feldman asserts that "every Class PWC (regardless of model) has the same defective exhaust resonator" and that the purchasers of all Class PWCs "were given the same disclosures (or lack thereof) at the time of sale." DE 29 at 10. Mr. Feldman in turn urges that "any distinction based on model names in irrelevant." *Id.* That contention is contrary to *Sanchez-Knutson*. Consistent with that decision, Mr. Feldman may not represent purchasers of any model that he did not purchase. His claim is therefore limited to the 2010-2016 Sea-Doo GTI PWC.

## III.    Standard of Review

The Court having assured itself of its jurisdiction, it is now appropriate to proceed to the merits. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that asserts mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. And "on the assumption that all the allegations are true (even if doubtful in fact)," the factual allegations pleaded "must be enough to raise a right to relief above the speculative level." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (brackets in original) (quoting Fed. R. Civ. P. 8(a)(2)). "The Supreme Court has employed a 'two-pronged approach' in applying the foregoing principles: first, a reviewing court should eliminate any allegations in the complaint that are merely legal conclusions; and second, where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Boyd v. Warden, Holman Correctional Facility*, 856 F.3d 853, 864 (11th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 679).

## IV. Discussion

Bombardier seeks dismiss each count of the Complaint, and seeks to strike certain damages and class allegations. The Court now turns to those points.

### A. Motion to Dismiss

#### 1. Breach of Express Warranty (Count I)

Defendant argues that the express warranty claim should be dismissed for two reasons: (1) the claim is based on a design defect rather than a manufacturing defect, and (2) Defendant's warranty bars the relief Plaintiff seeks. The Court disagrees with Defendant as to both arguments.

16

First, even if there is a meaningful distinction in this context between a manufacturing defect and a design defect, the Complaint adequately alleges a defect in material which is therefore covered under the applicable warranties. *See* [DE 1] at ¶ 39 ("Because the Exhaust Resonator Defect is caused by a defect in material, BRP is obligated to cover repairs to the exhaust system during the Limited Warranty and Emissions-Related Warranty periods.").

Second, the Complaint has adequately alleged facts supporting Plaintiff's position that the warranty limitations are unconscionable because the Exhaust Resonator Defect was known to Defendant prior to sale and Defendant failed to disclose the defect to purchasers. *See, e.g., Goodman Mfg. Co., L.P.*, 2013 WL 12172912, at *5 (M.D. Fla. Aug. 28, 2013) ("Under Florida law, a warranty limitation may be unconscionable when a defect is latent and the manufacturer knows that the product's effectiveness is questionable.").

### 2.   *Breach of Implied Warranty (Count III)*

Defendant argues that the breach of implied warranty claim fails for lack of privity.  The Court disagrees.  Florida courts have found the privity requirement satisfied in the absence of a direct purchase from the manufacturer where "the manufacturer's representative had direct contacts with the purchaser." *Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, 2010 WL 4624274, at *3 (S.D. Fla. Nov. 4, 2010) (compiling cases) (internal quotation marks omitted).  Here, the Complaint has plausibly alleged that the manufacturer had direct contact with the buyer. *See* [DE 1] at ¶ 16 ("Before Mr. Feldman purchased the subject PWC, he consulted with Defendants' sales representatives and reviewed sales/marketing materials.").  Additionally, a "[p]laintiff can pursue a claim of breach of implied warranty through third-party beneficiary law." *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233–34 (S.D. Fla. 2014).

### 3.   *Magnuson-Moss Act (Count II)*

Defendant's sole argument for dismissing the Magnuson-Moss claim is that the

Magnuson-Moss claim is derivative of the express and implied warranty claims, which should be

dismissed.  However, because the Court is allowing the express and implied warranty claims to

proceed, *see supra,* the Magnuson-Moss claim also survives.

### 4.   *Breach of Duty of Good Faith and Fair Dealing (Count VI)*

As explained by the district court in *Grandrimo v. Parkcrest Harbour Island Condo.*

*Ass'n, Inc.*:

> Under Florida law, "every contract contains an implied covenant of good
> faith and fair dealing, requiring that the parties follow standards of good faith and
> fair dealing designed to protect the parties' reasonable contractual expectations."
> *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th
> Cir. 2005) (citing *Cox v. CSX Intermodal, Inc.*, 732 So.2d 1092, 1097 (Fla. 1st
> DCA 1999)). "A breach of the implied covenant of good faith and fair dealing is
> not an independent cause of action, but attaches to the performance of a specific
> contractual obligation ." *Id.* Accordingly, "a breach of the implied covenant of
> good faith and fair dealing cannot be maintained under Florida law in the absence
> of a breach of an express term of a contract." *Id.* at 1152.

*Grandrimo*, No. 8:10-CV-964-T-27MAP, 2011 WL 550579, at *2 (M.D. Fla. Feb. 9, 2011).

Here, the Court disagrees with Defendant's contention that this claim must be dismissed

because it fails to identify a specific contractual provision that has been violated.  As set forth,

*supra*, the Court has found that Plaintiff has plausibly alleged a claim for breach of express

warranty.  Additionally, Plaintiff has sufficiently alleged that Defendant's interpretation of the

Limited Warranty to exclude coverage is unreasonable and contrary to the parties' expectations.

*See Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001) ("With the

implied covenant, one party cannot capriciously exercise discretion accorded it under a contract

so as to thwart the contracting parties' reasonable expectations.").

###### 5.  *Florida Deceptive and Unfair Trade Practices Act (Count IV)*

Defendant is correct that a claim under FDUTPA "does not arise merely from an alleged breach of warranty or breach of contract claim." *Horton v. Woodman Labs, Inc.*, No. 8:13-CV-3176-T-30MAP, 2014 WL 1329355, *4 (M.D. Fla. Apr. 2, 2014).  Rather, "[a] consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *DFG Grp., LLC. v. Stern*, 220 So. 3d 1236, 1238 (Fla. 4th DCA 2017) (quoting *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006)).

Plaintiff has alleged sufficient facts to support each of the FDUTPA elements.  The Complaint alleges that Defendant manufactured, sold, and distributed the Sea-Doos knowing that they were defective and that the defect posed an unreasonable safety hazard, but Defendant concealed and uniformly failed to disclose the defect to consumers. [DE 1] at ¶¶ 41-44, 91.  The Complaint further alleges causation and damages because the consumer purchased a product whose value at the point of sale was diminished owing to the deceptive or unfair act or practice, as the consumer paid a price for the product that is more than he would have absent the deceptive practice. [DE 1] at ¶¶ 39, 45-46, 92. *See, e.g.*, *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 (S.D. Fla. 2010) ("Ostensibly, a deceptive practice allows a manufacturer or vendor to charge a premium for a product that the manufacturer would not be able to command absent the deceptive practice. Thus, even if an individual consumer does not rely on a deceptive practice when deciding to purchase that product, the consumer will have paid more for the product than she otherwise would have. Consequently, the consumer suffers damages.").

###### 6.  *New York Consumer Protection Act Claim (Count V)*

For the reasons discussed *supra* in the Court's personal jurisdiction analysis, the New York Consumer Protection Act Claim must be dismissed.

### 7.  *Unjust Enrichment (Count VII)*

"A party may plead in the alternative for relief under an express contract and for unjust enrichment. 'But unjust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid.'" *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1220 (S.D. Fla. 2015) (citations omitted).  If Defendant stipulates that an express warranty is applicable, then Plaintiff agrees to dismiss the unjust enrichment claim. *See* [DE 29] at p. 24.  At this stage of the litigation, the Court will allow both the contract and equitable claim to proceed in the alternative.

### 8.  *Declaratory Judgment (Count VIII)*

The Court rejects Defendant's argument that Plaintiff cannot assert a claim for declaratory relief when an adequate alternative remedy exists at law. "Such a position is in direct contravention of Rule 57 of the Federal Rules of Civil Procedure" which provides that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." *DWF Mgmt., LLC v. Starr Indem. & Liab. Co.*, No. 16-CV-61238-KMM, 2016 WL 6611115, at *2 (S.D. Fla. Nov. 9, 2016) (quoting *Johnson v. Geico Gen. Ins. Co.*, No.: 08-cv-80740, 2008 WL 4793616, *3 (S.D. Fla. Nov. 3, 2008) (quoting Fed. R. Civ. P. 57).

## B.  Motion to Strike

### 1.  *Damages Claims*

#### a.  *Punitive Damages*

Defendant argues that the Complaint improperly asserts a litany of remedies in the Prayer for Relief at the conclusion of the Complaint which includes a request for an award of punitive damages, despite none of the alleged claims providing for punitive damages.  Plaintiff's Response [DE 29] fails to address this argument, thus conceding that it has not supported its

claim for punitive damages.  Accordingly, the request for punitive damages shall be stricken from the Complaint.

### b.   *Mandated Retrofit*

Defendant argues that the Court should strike Plaintiff's request for an order requiring Defendants to "remove and replace Plaintiffs' and class members' exhaust system with a suitable alternative product." *See* [DE 1] at p. 30.  However, Defendant concedes in its Reply that "[i]t warranted that if there was a defect in material or workmanship, it would repair or replace the defect." *See* [DE 33] at p. 5.  Accordingly, the Court declines to strike this request for relief at this juncture.

### 2.   *Class Allegations and Statute of Limitations*

Defendant's arguments for dismissal of the class allegations are better suited to an opposition for a motion for class certification, in the event that such motion is eventually filed by Plaintiff in the due course of this litigation.

### V.   Conclusion

For the reasons stated, it is **ORDERED AND ADJUDGED** that Defendant Bombardier Recreational Products Inc.'s Motion to Dismiss, Motion to Strike [DE 19] is **GRANTED in part and DENIED in part** as set forth in this Order.  Defendant shall file its Answer within fourteen (14) days.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 28th day of March, 2018.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:
Counsel of record