**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 17-cv-61150-DIMITROULEAS/Snow**

BRIAN FELDMAN AND DANIEL
DICKERSON, individually and on behalf
of a class of similarly situated individuals,

      Plaintiffs,

vs.

BRP US, INC., BOMBARDIER
RECREATIONAL PRODUCTS, INC.
and BRP, INC.,

      Defendant.

_____/

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF**
**PRELIMINARY APPROVAL OF CLASS SETTLEMENT,**
**CLASS CERTIFICATION, AND NOTICE**

Plaintiffs Brian Feldman, Daniel Dickerson, Deborah Dunn, and David Lombardi[1] file this Unopposed Motion and Memorandum in Support of Preliminary Approval of Class Settlement, Class Certification, and Notice, and they state the following:

## I.   INTRODUCTION

Plaintiffs filed this putative class action on June 7, 2017, alleging that certain models of Defendant Bombardier Recreational Products, Inc.'s ("Defendant" or "BRP") Sea-Doo® personal watercraft ("Subject Watercraft")[2] suffer from a defect in the exhaust resonator ("Resonator Defect"), which causes various forms of damage ("Watercraft Damage"). After substantial investigation and litigation, on July 20, 2018, the Parties executed a final Stipulation and Settlement Agreement ("Settlement" or "Agreement"), attached here as **Exhibit A**.    The Agreement incorporates a proposed Preliminary Approval Order (Ex. 1), Class (long-form) Notice (Ex. 2.), Claim Form (Ex. 3), Postcard Reminder (Ex. 4), and Final Judgment with Prejudice (Ex. 5).

"Federal courts have long recognized a strong policy and presumption in favor of class action settlements." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011). The core of the Settlement is Defendant BRP's agreement to provide substantive relief to Class Members.   BRP has agreed to provide extended warranties to all Class Members, reimburse Class Members for prior repairs, and pay repair costs of those Class Members whose Subject Watercraft still need repair.   Under the Settlement, BRP has also agreed to pay all

---

[1] The original Plaintiffs in this case were Brian Feldman and Daniel Dickerson. The Court later dismissed Plaintiff Dickerson's claims. ECF No. 45 at 10.  Mr. Dickerson and Plaintiffs Dunn and Lombardi have been added to the case via an amended complaint filed pursuant to the Settlement. (Agreement ¶¶ 11, 32).

[2] Unless otherwise defined in this Motion, all capitalized terms in this Motion have the meanings set forth in the Agreement.

Settlement administration costs and provide an additional notice to Class Members advising them of the potential Resonator Defect, what to do if problems arise, and that claims relating to the potential Resonator Defect will now be covered under warranty for two years from the Effective Date of the settlement. If finally approved, this Settlement will potentially provide relief to approximately 50,000 Class Members in four states and will conclude this extensive litigation between the Parties.

As set forth below and in the accompanying submissions, the Court should preliminarily approve the proposed Settlement, certify the proposed settlement Class, approve the manner and content of the proposed Notice and Claim Form, establish the deadlines for Settlement administration, and set the date for the Fairness Hearing.

## II. STATEMENT OF THE CASE

### A.   Fact and Claim Investigation

This case has been thoroughly investigated.   Class Counsel began working on this case in April 2016. *See* Declaration of Richard E. Norman ("Norman Decl.") (collected with other declarations in **Exhibit B**).   Class Counsel spent months in pre-suit investigation and legal research. (Norman Decl. ¶¶ 9-13).   Prior to filing suit, they were contacted by owners of the Subject Watercraft who complained about what counsel eventually learned to be an alleged defect in the exhaust resonator, causing it to melt and the Subject Watercraft to take on water. (*Id*. ¶¶ 10, 12).   After following up on these concerns and after several months of investigation by counsel, Plaintiffs filed the complaint in this Court on June 7, 2017, as a putative class action, alleging the 2010 to 2017 model years of the Subject Watercraft manufactured and marketed by BRP suffered from an exhaust resonator defect in material ("Resonator Defect") present when the watercrafts left the manufacturer, which had caused Watercraft Damage. (ECF No. 1 at ¶¶ 1, 38-39; Norman

Decl. at ¶ 14).   Based on these alleged facts and others, Plaintiffs pleaded claims for breach of express warranty, breach of implied warranty, violations of the Magnuson-Moss Warranty Act, unjust enrichment, and violations of the deceptive trade practice acts in Florida and New York. (ECF No. 1 ¶¶ 7, 55-123).

Defendant[3] has thoroughly tested the complaint and legal theories stated in it. On August 14, 2017, BRP filed a 33-page motion to dismiss the complaint (ECF No. 19), supported by over 400 pages of exhibits. (ECF No. 18). Plaintiffs filed an equally lengthy response to the motion (ECF No. 29) to which Defendant replied. (ECF No. 33). The Court granted in part and denied in part the motion on March 28, 2018. (ECF No. 45). Plaintiffs filed a motion to reconsider the Court's dismissal order on April 13, 2018, attaching a proposed amended complaint. (ECF No. 48).[4] Five days later, Defendant filed its Answer. (ECF No. 49).

Each Party also engaged in extensive investigation and discovery to explore and develop its position that in turn led to a thorough review of the strength and weaknesses of each litigant's position prior to reaching a compromise of the Action. Several attorneys among Class Counsel had previously investigated and successfully resolved a class action concerning another alleged defect in Sea-Doo® personal watercrafts and were able to bring that experience to bear in the investigation and prosecution of this case. (Norman Decl. ¶ 30).   In the discovery and investigation process of the Actions, Class Counsel performed hundreds of hours of work leading up to the proposed settlement in this case.   Class Counsel consulted industry experts. (*Id*. ¶ 18).   From early October 2017 through April 2018, the Parties exchanged Rule 26 disclosures; issued bilateral written

---

[3] After discussions among the original Parties, on July 7, 2017, Plaintiffs filed a notice of voluntary dismissal, dismissing original Defendants BRP, Inc., and BRP US, Inc., without prejudice, leaving BRP the only remaining defendant. (ECF No. 12).
[4] The Court later denied this motion as moot pending the outcome of the settlement negotiations. (ECF No. 51).

discovery; and attended depositions. (*Id.*).   And BRP produced approximately seven rounds of documents. (*Id.*).   Class Counsel took the deposition of Defendant's Fed. R. Civ. P. 30(b)(6) designees in Montreal, Canada, on May 31, 2018. (*Id.*).   Class Counsel reviewed and analyzed thousands of pages of documents, including consumer complaints, manuals, photos, testing reports, warranty data, quality assurance materials, engineering and design data, marketing and sales information, and other business records pertaining to the warranting, design, sale, and marking of the Subject Watercraft with the alleged Resonator Defect. (*Id.*).   Complicating matters further, many of the most important documents produced were in French and required time-intensive translation. (*Id.*).

### B.  Arms-Length Settlement Negotiations

Against this backdrop of investigation and discovery, the Settlement was the product of informed, arm's length negotiations aided by a neutral mediator.    The Parties began discussing potential resolution of the case in February of 2017.   On April 17, 2018, the Parties held a full day meeting in New York City to explore whether settlement was possible (Norman Decl. ¶ 18), which was attended by Class Counsel Richard Norman, Edward Zebersky, and Matthew Mendelsohn, along with Defense Counsel Doug Brown, Scott Sarason, and BRP corporate representatives. (*Id.*). During these discussions, the Parties shared information regarding the potential class size, and information regarding the scope and severity of the problems resulting from alleged Resonator Defect. They also exchanged their relative positions regarding a proposed settlement structure that would form the initial skeleton of a final deal. Thereafter the Parties continued discussions on the terms of potential Settlement. (*Id.*). They held other in-person meeting on May 31, 2018. (*Id.*). Finally, on June 11, 2018, the Parties attended a full day mediation in Miami, Florida, with the Hon. Scott Silverman, (Retired). (*Id.*).

After the foregoing investigation and negotiations and exchanges of several drafts, on July

20, 2018, the Parties executed the Agreement including the exhibits, now proposed for preliminary

approval. (*Id.*).

## III.   SETTLEMENT TERMS

### A.   Settlement Class

In order to effectuate the Settlement, and for settlement purposes only, the Settlement

provides that the Class Representatives will file an amended complaint in the Florida Action

asserting claims filed or intended to be filed in the Actions on behalf of Florida, New York, New

Jersey, and Texas putative Class Members.[5] Under the Settlement, the Parties propose that the

Court certify for purposes of settlement only the following "Class" of "Class Members" or

"Settlement Class Members":

> All current and former owners of the Subject Watercraft purchased
> in the state of Florida, New York, New Jersey, and Texas.
>
> Excluded from the Class are: (1) Defendants, any entity or division
> in which Defendant has a controlling interest, and its legal
> representatives, officers, directors, assigns, and successors; and (2)
> the Judge to whom this case is assigned.

Agreement (¶¶ 8, 31).

The "Subject Watercraft" is identified in the Agreement by model years and numbers.

(Agreement ¶ 28). Through investigation and discovery, the Parties believe that the Class (for the

---

[5] Contemporaneously with this Motion, Plaintiffs are moving for leave to file an amended complaint in accordance with the Settlement. Upon filing of the motion for leave to amend, the Settlement provides that Class Representative Dickerson and BRP will file an agreed motion to stay the New York Action pending the approval of the Settlement. (Agreement ¶ 3).   Should this Settlement not become final, the Class Representatives will dismiss without prejudice the amended complaint regarding all claims asserted or intended to be asserted by Class Representatives Dickerson, Dunn, and Lombardi on behalf of the New York, New Jersey, and Texas putative Class Members, and they may proceed with those claims in the appropriate jurisdiction. (*Id*. ¶ 32).

four states included) comprises approximately 50,000 Sea-Doo units containing the subject Resonator. (Norman Decl. ¶¶ 21-23); *see also* Declaration of Matthew R. Mendelsohn ("Mendelsohn Decl.") ¶ 15 (contained in Exhibit B).

### B.   Settlement Relief

If this matter were prosecuted on a contested basis, Plaintiffs believe that if a particular Class Member suffered damage to the Subject Watercraft resulting from the alleged Resonator Defect, that Class Member would be entitled to recover the cost of the repairs which the Class Member paid to repair the damage and/or would be entitled to recover the cost of replacing the Resonator. (Norman Decl.).

The Settlement directly addresses the claimed harm, exceeding what a Class Member might recover on an individual basis.  To this end, pursuant to the Settlement, Class Members are eligible to make claims for 100% reimbursement of prior repair costs for incurred Watercraft Damage to their Subject Watercraft(s); 100 % repair costs for repairs from Watercraft Damage to their Subject Watercraft(s) needed currently (i.e., where the damage has been incurred but has yet to be repaired for whatever reason); and 100% reimbursement of expenses incurred associated with the prior replacement of the Resonator made as a preventative measure. (Agreement ¶ 43). In addition, the Settlement calls for a transparent notice and administration process paid for entirely by BRP. (*Id*. ¶¶ 57-60, 66).  BRP will also create/extend warranty coverage for the Resonator Defect to *all Class Members* until two (2) years from the Effective Date of the Settlement. (*Id*. ¶ 44).  All Class Members will receive the extended warranty relief automatically.  Moreover—besides Settlement Notice—(i) BRP will notify Class Members of the Resonator Defect and related precautions (*Id*. ¶ 45); (ii) BRP will not use the Resonator in the manufacture of any new watercraft (*Id*. ¶ 46); and (iii) subject to Court approval, BRP will pay Plaintiffs' counsels' attorney's fees

and costs and Incentive Awards to Plaintiffs, which were negotiated separately from Class relief and which will in no way reduce any payments or relief to Class Members. (*Id*. ¶¶ 51-53).

Reimbursement relief will necessarily be provided on a claims-made basis. (Norman Decl. ¶ 34; Agreement ¶¶ 43, 47).   But there is no cap on the reimbursement and repair cost relief; BRP will be responsible for satisfying all valid claims, regardless of the cumulative amount of such claims; and the information necessary to submit a valid claim is simple and straightforward.   *See* (Agreement, ¶ 43 and Claim Form, Ex. 3 thereto). Moreover, Claim Forms and Written Documentation supporting them may be submitted electronically via the settlement website. (Agreement ¶ 60).   A claims process is necessary in this case because Class Members, rather than BRP, (i) know whether they suffered the monetary damages (i.e., repair/replacement costs) for which reimbursement will be paid, and (ii) possess the written proof supporting such monetary damages.   Accordingly, there is no effective means by which to provide compensation absent a claims process. (Norman Decl. ¶ 34). Plaintiffs' counsel are encouraging the submission of claims by (i) having a multi-tiered notice program (Agreement ¶¶ 17, 22, 58-60), including establishment of a Settlement website for notice and claims submission (*Id*. ¶ 60); (ii) negotiating for, and obtaining, a Postcard Reminder to be sent to Class Members 45 days prior to expiration of the Claims Period (*Id*. ¶ 59); and (iii) negotiating for, and obtaining, an agreement by BRP to pay 100% of the out-of-pocket expenses incurred (*Id*. ¶ 43).

In exchange for the valuable relief provided in the Settlement, Class Members provide a release expressly corresponding to the claims asserted in the operative complaint. (Agreement ¶¶ 24, 40). The Agreement does not release all claims against BRP; rather, the Released Claims are limited to only those claims arising or related to the Resonator Defect.   (*Id*. ¶ 24).   Personal injury claims are expressly excluded. (*Id*. ¶¶ 24, 40).

### C.  Settlement Notice and Administration, Exclusions, and Objections

The Settlement also incorporates a robust notice and administration program meant to ensure Due Process, for which BRP will bear all Administrative Costs. (Agreement ¶¶ 17, 22, 57-60).

In order to ensure the best notice practicable, the Settlement calls for a transparent notice program and individual notice to be sent directly to each Class Member and several levels of additional notice, including (i) long-form Notice with accompanying Claim Form (Agreement Exhs. 2 and 3) sent via first-class mail within thirty (30) business days following the Court's issuance of the Preliminary Approval Order (Agreement ¶ 58); (ii) not later than 45 days before the expiration of the one-hundred twenty (120) day Claims Period, a Postcard Reminder (Agreement Ex. 4) to all Class Members who have not yet opted out of the Settlement (*Id*. ¶ 59); (iii) a Settlement website containing pertinent documents and the long-form and a toll-free number, where Class Members can access an Interactive Voice Response and reach trained customer service operators; and (iv) the website contains a location where Class Members may update their mailing address, review FAQs, and submit the Claim Form and Written Documentation electronically. (Agreement ¶ 60).

Settlement Class Members will have an opportunity to exclude themselves from the settlement or object to its approval. (*Id*. ¶¶ 10, 63). The deadlines for filing Exclusion Requests and objections are conspicuously listed in the Notice and will be on the Settlement website. (Agreement Ex. 2). The process for filing Exclusion Requests and objections will also be explained in the Notice and outlined in documents available on the website. (Agreement ¶ 60).   The Notice informs Class Members that the Fairness Hearing will be the only opportunity for them to appear

and have their objections heard. (*Id*. Ex. 3). The Notice also informs Class Members who do not

opt out of the Settlement that they will be bound by the release. (*Id*.).

Finally, the mailed Notice and settlement website will provide information: (i) regarding

the material terms of the Settlement; (ii) the proposed awards of attorneys' fees and costs and

Incentive Awards;[6] (iii) how Class Members can obtain additional information. (*Id*. Ex 2 and ¶

60).

## IV.   ARGUMENT

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the

compromise of claims brought on a class basis.   Class certification is always discretionary.   This

Motion asks the Court to grant provisional class certification for settlement purposes only and to

approve the Settlement preliminarily.   Considering the strong policy favoring settlement of class

actions, conditional certification and preliminary approval of the Settlement are warranted.

### A.     Certification of a Settlement Class is Appropriate.

"A class may be certified solely for purposes of settlement [if] a settlement is reached

before a litigated determination of the class certification issue." *Borcea v. Carnival Corp*., 238

F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks omitted). For purposes of this

Settlement only, Defendant does not oppose class certification. Plaintiffs respectfully request that

the Court certify the Class defined in Section III(A) above for settlement purposes.

"Provisional settlement class certification and appointment of class counsel have several

practical purposes, including avoiding the costs of litigating class status while facilitating a global

---

[6] BRP has agreed to pay reasonable attorneys' fees and costs as awarded by the Court not to exceed $975,000.00 and Incentive Awards of $10,000.00 each to Plaintiffs Dickerson and Feldman and $2,500.00 each to Plaintiffs Dunn and Lombardi. (Agreement ¶¶ 51-53).  Defendant BRP will separately pay the attorneys' fees and expenses and Incentive Awards separate from and relief to the Class and these payments will not reduce such relief to the Class.

settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing." *Encarnacion v. J.W. Lee, Inc.*, CV 14-61927, 2015 WL 12550747, at *2 (S.D. Fla. June 30, 2015). In exercising its discretion whether to certify a settlement class, a court must consider all Federal Rule of Civil Procedure 23(a) factors and find at least one subsection of Rule 23(b) is satisfied—"except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial." *Gottlieb v. CITGO Petroleum Corp.*, 9:16-CV-81911, 2017 WL 6949273, at *2 (S.D. Fla. Aug. 14, 2017) (citing among others, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

Plaintiffs seek provisional certification under Rule 23(a) and (b)(3), which entails implicit and explicit requirements. The implicit requirement of Rule 23 embraced in this Circuit is that the proposed class be "adequately defined and clearly ascertainable." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir.2014) (quoting *Little v. TMobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir.2012)). This requirement is referred to as "ascertainability." "If the district court determines that th[e] ["ascertainability"] requirement has been met, it is then obliged to examine the [explicit] prerequisites set forth in Federal Rule of Civil Procedure 23(a)." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016). The four explicit requirements of Rule 23(a) are: "(1) the class must be so numerous that joinder of all members is impracticable ('numerosity'); (2) questions of law or fact common to the class must exist ('commonality'); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ('typicality'); and (4) the representative parties must fairly and adequately protect the interests of the class ('adequacy of representation')." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 668 (S.D. Fla. 1997).

In addition, the court must find that the case meets one of the explicit requirements under subparts (1), (2), and/or (3) of Rule 23(b) and/or Rule 23(c)(4). *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 668–69 (S.D. Fla. 2014). Under Rule 23 subpart (b)(3), certification is appropriate if two requirements are met: (i) the questions of law or fact common to the members of the class predominate over individual issues of law or fact (known as "Predominance"); and (ii) if a class action is superior to other available methods for the fair and efficient adjudication of the controversy (known as "Superiority"). *See Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 689 (S.D. Fla. 2013).

For purposes of the Settlement, all class certification elements are satisfied here:

**1.   Numerosity/Ascertainability are Satisfied.**   The proposed Class is made up of owners of approximately 50,000 Subject Watercrafts spread across four states.[7] (Norman Decl. ¶ 21).   Joinder of these persons would be impracticable. *See Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657, 664 (S.D. Fla. 2014) (joinder of more than forty persons impracticable under Rule 23(a)); *Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 680 (S.D. Fla. 2009) (geographic dispersion of members showed joinder impracticable under Rule 23(a)). The identity of the Class Members can be objectively determined from BRP's business records and the claims process. (Norman Decl. ¶¶ 18, 21, 34; Agreement ¶¶ 57-58). *See Estrellita Reyes v. BCA Financial Services, Inc.*, No. 16-24077-CIV, 2018 WL 3145807, at *11 (S.D. Fla. June 26, 2018) (ascertainability may be satisfied by defendant's records and through self-identification). Accordingly, numerosity and ascertainability are easily satisfied.

---

[7] There are believed to be approximately 50,000 Subject Watercrafts sold within the four Settlement Class states. (Norman Decl. ¶ 21). Because some Class Members may have purchased multiple units and other Subject Watercraft may have been re-sold, it is likely the number of Class Members approximates the number of total units sold.

2.      **Commonality/Predominance/Superiority are Satisfied.** "The threshold for commonality under Rule 23(a)(2) is not high." *Gottlieb,* 2017 WL 6949273, at *2.   Commonality only requires one issue common to all members of the class.   *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 536 (S.D. Fla. 2015).   "[C]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).   Commonality is generally satisfied when "[d]efendants have engaged in a standardized course of conduct that affects all class members." *Sanchez-Knutson*, 310 F.R.D. at 536 (internal citations and quotations omitted).

Predominance under Rule 23(b)(3) is more demanding, but does not require that all common questions predominate. *Id.* at 537. The predominance inquiry focuses on "whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Brown v. SCI Funeral Servs. of Fla.*, 212 F.R.D. 602, 606 (S.D.Fla.2003).   "To conduct this inquiry, the Court must consider the cause of action and 'what value the resolution of the class-wide issue will have in each member's underlying cause of action.'" *Sanchez-Knutson*, *id.* (citations omitted).

Here, common questions predominate over any isolated or individual issues.   Plaintiffs allege that all Subject Watercraft purchased by the Class Members suffer the same inherent defect. (*See* First Amended Complaint ¶¶ 1-7). Each proposed Class Representative seeks to represent Class Members in his or her respective state—Florida, New York, New Jersey, and Texas.   Each Class Representative and each Class Member shares the fact that s/he has at some point been an owner of the Subject Watercraft.[8]   The overarching common question of fact affecting each Class

---

[8] Plaintiffs Feldman, Dickerson and Lombardi have all had the alleged defect manifest and have suffered Watercraft Damage. Plaintiff Dunn owns a 2010 Sea-Doo RXP-X 255 watercraft model that contains the subject resonator but has yet to experience the manifestation of the alleged resonator defect. (Norman Decl. ¶ 12).

Member is whether the Subject Watercrafts contained inherently defective Resonators present upon leaving the manufacturing facility —*i.e.* they suffered from the Resonator Defect defined in the Settlement. *See Rosen*, 270 F.R.D. at 681 (vehicle defect was predominant common issue); *Sanchez-Knutson*, 310 F.R.D. at 538 (same).

The overarching common questions of law are whether Defendant's conduct vis-à-vis the inherent Resonator Defect breached express warranties, breached the duties of good faith and fair dealing, constituted unjust enrichment, or violated deceptive or unfair trade practice statutes in each of those states.   The proof of this defect will be the same for each Class Member and will be central to proving each of these legal claims, whose elements will be the same in each respective state.   A resolution of these common questions of law regarding Defendant's conduct vis-à-vis the inherent Resonator Defect will either materially advance or not the claim of each Class Member in each respective state. *See Dukes*, 564 U.S. at 369 (commonality found when issue advances or not claim of each class member); *Sanchez-Knutson,* 310 F.R.D. at 537 (same); *see also In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 646 (S.D. Fla. 2015) (multistate subclasses satisfied predominance when common issue impacted every class member's effort to establish liability). Commonality and predominance are thus satisfied.

"[T]he conclusion that common issues of law and fact predominate…strongly militates in favor of a class action as a superior means of litigating [a] case." *Cnty. of Monroe, Fla. v. Priceline.com, Inc*., 265 F.R.D. 659, 671-72 (S.D. Fla. 2010); *see Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1358 (11th Cir. 2009) (if a court finds predominance then a class action will likely be superior to individual actions). The superiority requirement comes down to whether the class treatment would be advantageous and makes sense. [9] Class actions are meant to promote

---

[9] Rule 23(b)(3) states several overlapping factors courts review when discerning superiority,

"economies of time, effort and expense." *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 318

(S.D. Fla. 2001). It would make no sense for court after court to hear the same evidence regarding

the same predominant fact question—the alleged Resonator Defect—in light of the same common

legal issues stated above, and it "would be neither efficient nor fair to anyone, including the

[Defendant]… to force multiple trials to hear the same [liability] evidence" based on the alleged

defect. *See Fournigault v. Independence One Mortg. Corp.*, 234 F.R.D. 641, 648 (N.D. Ill. 2006)

(quotation omitted); *In re Terazosin Hydrochloride Antitrust Litigation*, 220 F.R.D. 672, 700 (S.D.

Fla. 2004) (holding separate trials for claims that could be tried together would be costly,

inefficient, and burden the court system by forcing individual plaintiffs to repeatedly prove the

same facts and make the same legal arguments before different courts).

Moreover, the approximate number of Class Members here—50,000—is "too large for the

prosecution of separate actions by each class member to be likely, practical, or desirable." *Sanchez-

Knutson*, 310 F.R.D. at 541.   And the Parties are unaware of any other pending litigation on the

Resonator Defect other than the Actions or of anyone wishing to prosecute this case as a class

action in a different forum. *See id.*   Superiority is therefore satisfied.

**3. Typicality/Adequacy of Representation are Satisfied.** "Typicality does not require

that the claims of the class representative be identical to those of the class at large, but only that

they arise from the same event, pattern or practice and be based on the same legal theory." *Aranaz*,

302 F.R.D. at 665 (citation omitted). "Although similar to commonality in that it concentrates on

the 'nexus' between class members and the named class representative, typicality differs from

---

however, the list is not exhaustive and other factors are often considered or stated in different
terms. *See Walco Invs. v. Thenen,* 168 F.R.D. 315, 337 (S.D. Fla. 1996); *see, e.g., Manno*, 289
F.R.D. 674, 690 (stating superiority focuses on "advantages" of class treatment).

commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class." *Sanchez-Knutson*, 310 F.R.D. at 539.

In the present case, each Plaintiff, like each Class Member, owned a Subject Watercraft with an alleged, inherent Resonator Defect. Each Plaintiff shares a common legal injury with other Class Members based on the defect. (Norman Decl. ¶ 12).   The proof of this defect will be the same for each Class Member and will be central to proving each of these legal claims, whose elements will be the same in each respective state.   Consequently, by pursuing their own claims, Plaintiffs will necessarily advance the interests of the proposed Class, and Plaintiffs thereby satisfy Rule 23(a)(3)'s typicality requirement.

"Adequacy of representation is tied to both commonality and typicality." *Sanchez-Knutson*, 310 F.R.D. at 540.   Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).   It "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *CMart, Inc. v. Metro. Life Ins. Co*., 299 F.R.D. 679, 690 (S.D. Fla. 2014).

No actual or potential conflicts exist between Plaintiffs and the Class Members in this case. (Norman Decl. ¶ 12).   As stated above, Plaintiffs are challenging the same unlawful conduct and pursuing monetary relief for the benefit of all Class Members. (*Id*.). Plaintiffs' adequacy is further bolstered by their choice of qualified counsel. Class Counsel are well versed in complex class litigation, successfully handling hundreds of class and complex civil cases in this Court and others, including class defect cases involving the Sea-Doo® personal watercraft. (Norman Decl. ¶¶ 2-3, 6, 12, 30; Mendelsohn Decl. ¶¶ 7-8, and Declaration of Edward H. Zebersky ("Zebersky Decl.")

¶¶ 6-14) (all collected in Exhibit B).   Plaintiffs and their counsel are thus adequate for Rule 23(a)(4) purposes.

In addition to satisfying Rule 23(a)(4), Plaintiffs' counsel also satisfy the considerations of Rule 23(g). Rule 23(g)(4) requires the Court to appoint counsel who will fairly and adequately represent the Class, considering, among other things: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." As demonstrated by their declarations, Plaintiffs' counsel are comprised of highly competent and experienced class-action litigators and trial attorneys, who have been appointed class and lead counsel in numerous cases that have been certified in federal court and state courts involving product defect claims and others. (*see* Norman Decl., Mendelsohn Decl., Zebersky Decl.)    Their declarations also identified the extensive work counsel have done in prosecuting the Actions. (*Id.*)

## B.    Preliminary Approval of the Settlement is Appropriate.

As with settlement class certification, Rule 23(e) settlement approval is discretionary.   *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).   "[I]n analyzing any settlement, 'the clear policy in favor of encouraging settlements must . . . be taken into account.'" *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D., 457, 466 (S.D. Fla. 2002) (citation omitted); *see also Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (same).

The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.   *See Ass'n for Disabled Ams.* 211 F.R.D. at 466. Moreover, "[i]n evaluating a settlement's fairness, 'it should [not] be forgotten that compromise is the essence of a settlement.   The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might [be] gained.'" *Id*. at 467; *see also Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002) (same).

Approval of a class action settlement is procedurally a two-step process. *See* David F. Herr, Annotated Manual For Complex Litigation ("MCL") § 21.632 (4th ed.2008). *First,* the court determines whether the proposed settlement is "'within the range of possible approval" or, stated differently, whether there is "'probable cause'" to give notice of the proposed settlement to class members.   *Shaw v. Set Enterprises, Inc.,* No. 15-62152-CIV, 2017 WL 2954675, at *1 (S.D. Fla. June 30, 2017). Preliminary approval is an "initial evaluation" of the fairness of the compromise. *Id*.   *Second*, after the court preliminarily approves the settlement and notice is provided to class members, the court conducts a fairness hearing at which all interested persons may be heard and then makes a final determination on approval—whether the Settlement is "fair, adequate and reasonable." *See* MCL §§ 21.634; *see also Bennett*, 737 F.2d at 986.

Here, there are several reasons why the proposed Settlement is within the range of reasonableness and provides probable cause to provide notice of it to the proposed Class:

**1. Recovery Under the Circumstances is Significant.**  This Settlement meets the critical test in gauging its fairness and reasonableness: As detailed above, seen in total, the Settlement provides concrete monetary and non-monetary relief that directly addresses the claimed

harm. *See Lipuma*, 406 F. Supp. 2d at 1323.   Indeed, the Settlement relief equals and exceeds what a Class Member might recover on an individual basis. (Norman Decl. ¶¶ 31-32, 34).

The Settlement also benefits Class Members by providing immediate relief in lieu of several more months or years of protracted litigation and appeals, which may delay relief to Settlement Class Members. *See Lipuma* at 1322; *In re Checking Account Overdraft Litig*., 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011).   Under the Settlement, Class Members are currently eligible to make claims for 100% reimbursement of prior repair costs, 100% of repair costs for repairs from Watercraft Damage needed currently, and 100% reimbursement of expenses incurred associated with the prior replacement of the Resonator made as a preventative measure. (Agreement ¶ 43). *See Poertner v. Gillette Co*., 618 Fed. Appx. 624, 628 (11th Cir. 2015) cert. denied 136 S. Ct. 1453 (2016) (approving claims-made settlement noting relief exceeded what class member may receive at trial); *see also Montoya v. PNC Bank, N.A*., No. 1420474-CIV-GOODMAN, 2016 WL 1529902, at *12 (S.D. Fla. Apr. 13, 2016) (citing *Poertner* and collecting claims-made case law); *In re Checking Account Overdraft Litig*., 830 F. Supp. 2d at 1346 (recovery of between 9% and 45% of potential damage was part of "exemplary result"); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (settlement approval proper even if only at a fraction of potential recovery).

In addition to monetary relief, BRP will discontinue the Resonator in new watercraft, will pay for settlement notice and further notify the Class of the Resonator Defect, and will create/extend warranty coverage[10] for the Resonator Defect to all Class Members. *See Montoya*,

---

[10] It is important to understand that the particular Resonator issue made the subject of this litigation and proposed Settlement was *never* covered under BRP's existing 1-year limited express warranty. As such, the Settlement relief obtained requires that BRP cover the alleged Resonator Defect issue *for the first time*; and to do so for a period that does not end until two (2) years after the Effective Date of this settlement, which Effective Date will not occur until there is a final non-appealable

2016 WL 1529902, at *14 (considering with approval non-monetary relief and cessation of offending practice in assessing settlement fairness).

## 2. The Settlement is the Product of Serious, Informed, Non-collusive Negotiations and Litigation.

Furthermore, "[t]here is a presumption of good faith in the negotiation process" of the Settlement. *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) (citation omitted).   As set forth above, the proposed Settlement resulted from intensive, arm's-length negotiations among very experienced attorneys with the assistance of an experienced mediator. (Norman ¶¶ 18-20; Mendelsohn Decl. ¶¶ 12-14, 16; Zebersky Decl. ¶¶ 18-20, 23); *see Wilson v. EverBank*, 14-CIV-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (fact that mediator involved showed arm's length negotiation process); *Saccoccio*, 297 F.R.D. at 692 (same); *see also Poertner*, 618 F. App'x at 630 ("self-dealing contention" was "belied" by involvement of experienced mediator).   The parties negotiated Settlement terms only after extensive investigation of the facts and law, numerous meetings and conferences between representatives of the parties, review of documents, interviews of numerous potential witnesses, and interviews of experts in the field. [11]   These efforts provided Plaintiffs and their experienced counsel with sufficient information to thoroughly analyze the strengths and weaknesses of the case, and subsequently negotiate and consummate the Settlement proposed to the Court.   The terms also show the

---

judgment in this matter.   For illustration purposes, a 2010 model watercraft would have had a limited express warranty that (1) did not even cover this resonator issue; and (2) would have expired in 2011- more than seven years ago.   Under this proposed Settlement, that same watercraft will now have this Resonator issue covered *completely* for a period of two years from the Effective Date of this Settlement—a truly extraordinary result by any measure.

[11] Vast formal discovery is not a necessary prerequisite to a class settlement where the parties had sufficient information to make an informed decision about settlement. *See Lipuma*, 406 F. Supp. 2d at 1316–17 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir.1977)).   Several Class Counsel were familiar with the facts from prior litigation, which informed the negotiations. *See Lipuma* at 1316 and *see also* Norman Decl. ¶ 30.

negotiations were at arm's length.   Settlement does not improperly grant preferential treatment to segments of the Class or the Class Representatives.   All Class Members are entitled to the same relief in regard to prospective extended warranties, and the same relief in regard to the repayment of 100% of out-of-pocket expenses. The negotiations have produced a result that Plaintiffs and their counsel believe to be in the best interests of the proposed class, taking into account the costs and risks of continued litigation. (Norman Decl. ¶ 19; Mendelsohn Decl. ¶ 5; Zebersky Decl. ¶ 5).[12]

**3. The Settlement Complies with Due Process Requirements.**   Finally, the multiple forms and avenues of notices to the Class of the Settlement clearly satisfy Rule 23 and Due Process. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1317 (11th Cir. 2012).   Rule 23(c)(2)(B) provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(h)(1).   "To satisfy due process requirements, the notice must be the 'best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1261 (S.D. Fla. 2016) (citations omitted).   Multi-tiered notice programs including direct mail and other means satisfy these standards. *Id.* at 1262; *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007).

---

[12] The opinion of experienced counsel supporting a settlement is entitled to considerable weight. *See Shaw*, 2017 WL 2954675, at *1 ("courts should [also] give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks.").

The proposed manner and forms of notice satisfy Rule 23 and Due Process. The Settlement calls for two instances of direct first-class mail notice—a long form notice ("Notice") and Reminder Postcard—and a settlement website referred to in both mailings containing relevant documents, information, a toll-free number, access to live administrative personnel, and a portal for uploading claims documents. The Notice (Agreement, Ex. 2) defines the Settlement Class; describes the allegations of the operative complaint; informs Class Members of their right to opt-out and object, the procedures for doing so, and the time and place of the Fairness Hearing; informs Class Members of their rights to enter an appearance through their own counsel, if they desire; notifies Class Members that a Class judgment would bind them unless they opt out; and tells them where they can obtain more information, such as a full copy of the Settlement Agreement. *See* Fed. R. Civ. P. 23(c)(2)(B); *see also Perez*, 501 F. Supp. 2d at 1377. The Notice also avoids legalese and is based on the models published by the Federal Judicial Center.[13]   The Reminder Postcard (Agreement, Ex. 4) in turn summarizes the claims, the Class definition, refers to the Settlement website, and the deadline for submitting a claim.

## V.   CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court grant the Settlement preliminary approval and conditionally certify the proposed Class for purposes of settlement, directing notice be distributed to Settlement Class Members.


Respectfully submitted,


/s/ *Edward H. Zebersky*
Edward H. Zebersky (FBN 908370)
Mark S. Fistos (FBN 909191)

---

[13] As the MCL notes: "The FJC has tested the form notices for comprehension and identified some principles that will be of value to those drafting such notices." § 21.31 at 286, n 880.

**ZEBERSKY PAYNE, LLP**
110 Southeast 6th Street, Suite 2150
Ft. Lauderdale, FL 33301
ezebersky@zpllp.com; mfistos@zpllp.com
Telephone:   954-989-6333
Facsimile:   954-989-7781

Matthew R. Mendelsohn *(Pro Hac Vice)*
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: 973-228-9898

Richard E. Norman (*Pro Hac Vice*)
R. Martin Weber, Jr. (*Pro Hac Vice*)
**CROWLEY NORMAN, LLP**
3 Riverway, Suite 1775
Houston, Texas 77056
Telephone: 713-650-1771

Britton D. Monts *(Pro Hac Vice)*
**THE MONTS FIRM**
Frost Bank Tower
401 Congress Ave., #1540
Austin, TX 78701
Telephone: 512-474-6092

*Attorneys for Plaintiff and Putative Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 9, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send notification to all attorneys of record.

/s/ *Edward H. Zebersky*
Edward H. Zebersky

[1748354/2]