**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 17-cv-61150-DIMITROULEAS/Snow**

BRIAN FELDMAN AND DANIEL
DICKERSON, individually and on behalf
of a class of similarly situated individuals,

     Plaintiffs,

vs.

BRP US, INC., BOMBARDIER
RECREATIONAL PRODUCTS, INC.
and BRP, INC.,

     Defendant.

_____/

**PLAINTIFFS' *UNOPPOSED* MOTION AND MEMORANDUM OF LAW IN SUPPORT
OF AWARD OF AGREED ATTORNEYS' FEES AND LITIGATION EXPENSES**

<u>**MOTION**</u>

Plaintiffs, through Class Counsel, move this Court for an order, pursuant to the class action settlement of the Parties, awarding the following:

1. Attorneys' fees and costs in the agreed amount of **$975,000** to be disbursed among the firms involved in the prosecution of this action; and

2. Class representative incentive awards in the agreed total amount of **$25,000**, to be disbursed in varying amounts to the four plaintiffs involved in the action and named in the First Amended Complaint (ECF 63).

<u>**SUPPORTING MEMORANDUM**</u>

**I.    Background on Plaintiffs' Claims, Settlement Relief, Negotiated Fee and Incentive Award**

    **A.   Plaintiffs brought suit based on an alleged defect in Sea-Doo personal watercraft alleging claims for breach of warranty and deceptive trade practices, among others**.

Plaintiffs and Settlement Class Members[1] were purchasers of 2010 to 2017 model years of the Sea-Doo personal watercraft ("Subject Watercraft") manufactured and marketed by Defendant Bombardier Recreational Products, Inc. ("BRP"). In this four-state Action (ECF No. 58-1 at 4; ECF No. 63), Plaintiffs alleged the Subject Watercraft suffered from an exhaust resonator defect in material ("Resonator Defect") present when the watercrafts left the manufacturer, which had allegedly caused Watercraft Damage, allegedly leading to failure and substantial water intrusion. Based on these allegations, Plaintiffs brought claims for declaratory relief, unjust enrichment, express warranty, violation of state deceptive trade practice acts, breach of duty of good faith and fair dealing, and breach of warranty (ECF No. 63). Throughout the case, BRP has vigorously

---

[1] Capitalized terms have the same meaning of those terms in the Settlement Agreement (ECF No. 58-1).

contested and opposed Plaintiffs' allegations and has denied any liability relating to the allegations or claims made in the Action.[2]

### B. After significant investigation and litigation, the Settlement that Class Counsel negotiated provides substantial, concrete relief tailored to the harm alleged in the Action.

As detailed in the attached declarations from Class Counsel[3] and those submitted in support of preliminary approval (ECF No. 58-2), this litigation has been comprehensive, thoroughly investigated, hard-fought, and it demanded an expenditure of significant time, costs, and effort. To date, Class Counsel have received no payment for their services in the Action. Class Counsel first became aware of the alleged Resonator Defect in April 2015,[4] in connection with a class member's individual claim, and a little more than a year later, in June 2016, began investigating the possibility of a class action. After much research and investigation, Class Counsel eventually filed the original complaint in June 2017. (ECF No. 1). After conducting substantial post-suit discovery and work,[5] Class Counsel negotiated a valuable settlement agreement ("Settlement") (ECF No. 58-1) at arm's length,[6] which the Court preliminarily approved in all respects on August 13, 2018 (ECF No. 64).

The Settlement Agreement Class Counsel secured represents a significant result for approximately 30,000-40,000 Settlement Class Members in four states[7] and achieves multiple

---

[2] *See, e.g,* ECF Nos. 19, 33, & 45.
[3] **Exhibit A** is the Declaration of Richard E. Norman ("Norman Decl.") (see ¶¶ 8-20 therein); **Exhibit B** is the Declaration of Matthew R. Mendelsohn ("Mendelsohn Decl."); **Exhibit C** is the Declaration of Britton D. Monts ("Monts Decl."); and **Exhibit D** is the Declaration of Edward H. Zebersky ("Zebersky Decl.").
[4] Norman Decl. at ¶ 9.
[5] *See* Norman Decl. at ¶¶ 8-24.
[6] Norman Decl. at ¶¶ 21-23, 25.
[7] *See* Norman Decl. at ¶ 26, including n. 2.

objectives, providing them comprehensive substantive relief tailored to the bases and goals of the Action:

*First*, as to those Class Members who had suffered the manifestation of the alleged Resonator Defect, the Settlement provides full relief in the form of 100% monetary reimbursement for any out-of-pocket repairs incurred by such Class Members as a result of this alleged defect. (ECF No. 58-1 at ¶ 43.a.).

*Second*, as to any Class Members who had suffered the manifestation of the alleged Resonator Defect but for whatever reason had yet to make the necessary repairs to the Subject Watercraft stemming from such defect, Class Counsel sought to provide those Class Members with opportunities to submit their damaged watercraft to an authorized BRP dealer to have any such repairs conducted at the expense of BRP. (ECF No. 58-1 at ¶ 43.b.).

*Third*, Class Members who have not yet suffered any manifestation of the alleged Resonator Defect but, as a preventive measure, incurred expense associated with the replacement of the subject Resonator with a different after-market resonator model prior to the execution of the Settlement Agreement, may, within the Claims Period, make a claim to BRP for 100% reimbursement for such expense, which BRP will honor, subject to reasonable Written Documentation of incurred expenses. (ECF No. 58-1 at ¶ 43.c.).

*Fourth*, as to those Class Members who have not yet suffered any manifestation of the alleged Resonator Defect, the Settlement ensures that this alleged defect will now be (for the first time) expressly covered under the BRP limited warranty; and that such limited warranty would be automatically extended to 2 years (instead of 1 year) commencing from the Effective Date of the proposed Settlement (defined as the date of a final, non-appealable judgment). (ECF No. 58-1 at ¶ 44).

*Fifth*, BRP has provided an additional notice to Class Members advising them of the potential Resonator Defect, what to do if problems arise, and that claims relating to the potential Resonator Defect will now be covered under warranty for two years from the Effective Date of the Settlement. (ECF No. 58-1 at ¶ 44).

And *Sixth*, BRP agreed not use the Resonator in the manufacture of any new watercraft. (ECF No. 58-1 at ¶ 45).

### C. Negotiations of the provisions on attorneys' fees and incentive awards were at arm's length.

In addition to this substantial relief, in the Settlement Agreement BRP agreed to pay without opposition up to certain amounts incentive awards to named Plaintiffs and Class Counsel's fees and costs. (ECF No. 58-1 at ¶¶ 51-52). The Court's preliminary approval order acknowledged this agreement and consideration of this current motion at the upcoming Fairness Hearing. (ECF No. 64 at ¶ 13).

These agreements on fees and incentive payments (i) were negotiated at arm's length, separately from the Class Member relief above; (ii) do not in any way reduce Class relief and; (iii) were in no way preconditions to agreement on the terms of the Settlement benefitting Class Members.[8] As stated in the Settlement Agreement,

> [S]ubject to approval of the Court…
>
> BRP shall pay to each of the Class Representatives Dickerson and Feldman the sum of $10,000.00, and BRP shall pay to each of the Class Representatives Dunn and Lombardi the sum of $2,500.00, or any lesser sum that may be ordered by the Court ("**Incentive Award**"), in recognition of and in compensation for the time, effort, and resources expended by such Class Representatives in investigating and prosecuting this Action, and in obtaining the relief provided for [in the Settlement] above. These amounts were not negotiated until such time as the Parties had reached an on the class benefits described above.

***

---

[8] Norman Decl. at ¶¶ 21, 25; Monts Decl. at ¶ 19; Zebersky Decl. at ….

> BRP shall [also] pay to Class Counsel reasonable attorneys' fees and costs in an amount not to exceed $975,000.00. ("**Fee and Cost Award**"), Class Counsel shall make application to the Court for the Fee and Cost Award, and BRP will not oppose such request up to $975,000,00. These amounts were not negotiated until such time as the Parties had reached an agreement on the class benefits described above.

(ECF No. 58-1 at ¶¶ 52-53) (emphasis added).

## II.   Federal courts encourage and give deference to fee agreements in class litigation, and that deference should be afforded here.

The agreement the Parties reached providing that that BRP will pay attorneys' fees to Class Counsel is commonplace in class settlements. Rule 23(h) of the Federal Rules of Civil Procedure expressly authorizes agreements on attorneys' fees and costs, stating, "[i]n an action certified as a class action, the court may award reasonable attorney fees and nontaxable costs authorized by law *or by agreement of the parties*." Fed. R. Civ. P. 23(h) (emphasis added).

A central virtue of a fee negotiated by parties at arms' length is that it is essentially a market-set price resulting from opposing interests.[9] A defendant has an interest in minimizing the fee; Class Counsel have an interest in maximizing it; and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what the court may award if the matter were litigated.[10]

The United States Supreme Court has endorsed consensual resolution of attorneys' fee issues, finding, "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart,* 461 U.S. 424,

---

[9] *See Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1211-12 (S.D. Fla. 2006) (citing among others *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992)) (market factors, best known by negotiating parties themselves, should decide amount of attorneys' fees).

[10] *See In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 WL 226321 at, * 4 (C.D. Cal. June 10,1992), appeal dismissed, 33 F.3d 29 (9th Cir. 1994).

437 (1983); *see also Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.").[11] This deference holds greater weight in case like this when, "the parties negotiated attorneys' separately from the underlying settlement and only after the terms of the settlement were reached,"[12] and no objections have been received concerning the fees Class Counsel request.[13] Also, neither the Fees and Costs award, nor the Incentive Awards, will reduce Settlement relief to Class Members. The Settlement Agreement's provisions on Fees and Costs and Incentive Awards were clearly negotiated at arm's length, which is entitled to deference by the Court.

**III.    Class Counsel have provided ample notice and due process to Class Members regarding attorney's fees and incentive awards**.

Federal Rule of Civil Procedure 23(h) also sets forth the general procedural thresholds that Plaintiffs through Class Counsel must follow here to ensure due process —among other things, the applicant must request fees by motion; notice of the request must be directed to class members; class members and parties must be allowed to object to the fee request; and the motion must specify

---

[11]  Abrogated on other grounds in *Blanchard v. Bergeron*, 489 U.S. 87 (1989).

[12]  *In re Progressive Ins. Corp. Underwriting & Rating Practices Litig.*, No. 1:03-CV-01519-MP-AK, 2008 WL 11348505, at *2 (N.D. Fla. Oct. 1, 2008); Norman Decl. at ¶¶ 21, 25; *see also Lee v. Ocwen Loan Servicing, LLC*, 14-CV-60649, 2015 WL 5449813, at *12 (S.D. Fla. Sept. 14, 2015) (citing *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (finding no collusion where attorneys' fees were "negotiated separately from the rest of the settlement, and only after substantial components of the class settlement had been resolved"); *Bonetti v. Embarq Management Company*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (stating, "the best way to insure that no conflict has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement"); *Elkins v. Equitable Life Ins. Co. of Iowa*, 1998 WL 133741 at, *34 (M.D. Fla. 1998) (same).

[13]  *In re Progressive Ins. Corp.*, 2008 WL 11348505, at *2 (citing *Johnson*, 488 F.2d 714, 720; *see also Ingram*, 200 F.R.D. 685, 695 (citations omitted).

the grounds for the fees requested. *See* Fed. R. Civ. P. 23(h)(1)-(2); *see also* Newberg on Class Actions, §§ 15:2, 15:10, 15.18 (5th ed.).

Class Counsel have met these thresholds. Under the Settlement Agreement[14] and the Court's orders,[15] individual notice and a claim form were mailed directly to each Class Member and a Settlement website was established.[16] Each of these forms of notice explained in detail the relief available and Class Members' rights to exclude themselves or object to the Settlement (including the agreed Incentive and Fees and Cost Awards). They also specified the amounts of the Incentive Awards and Fees and Costs Awards Plaintiffs through Class Counsel would request.[17] To date, to Class Counsels' knowledge, there have been **no objections** to the agreed fees, costs, and incentive awards and **no opt-outs**.

## IV. Florida law and the lodestar calculations from the attached declarations provide the proper framework for Class Counsels' attorney's fee.

The basis for the Fees and Costs award is the Parties' Settlement Agreement, which makes Florida law controlling.[18] The underling statutory claims in the operative complaint incorporated state fee shifting provisions, which, in this diversity case,[19] gives rise to a lodestar analysis under Florida law.[20] Under the lodestar approach, a court calculates the number of hours the attorneys

---

[14] ECF No. 58-1 at ¶¶ 57-58, 60.

[15] ECF No. 63 at ¶¶ 10-12, 23; ECF No. 67.

[16] http://www.brpresonatorsettlement.com.

[17] *See, e.g.*, http://www.brpresonatorsettlement.com/DocumentHandler.ashx?DocPath=/Documents/Feldman_v_BRP_Long_Form_Notice_8_24_18_v9_Printer_Version.pdf.

[18] ECF No. 58-1 at 24.

[19] *See Trans Coastal Roofing Co., Inc. v. David Boland, Inc.*, 309 F.3d 758, 760 (11th Cir. 2002) (in a diversity case, when attorneys' fees requests sound in state law the substantive law of Florida, the forum state, applies).

[20] ECF No. 63 at 22-25 (FDUTPA Count). FDUTPA provides that a prevailing party is entitled to reasonable attorneys' fees and costs. Fla. Stat. § 501.2105(1). The fees recoverable are those devoted to the entire action, not merely the FDUTPA claim. *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 370 (Fla. 2013). Attorney's fees including multipliers are permitted in

reasonably expended in litigating the case and multiplies this total by a reasonable hourly rate. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *see also In Standard Guaranty Insurance Co. v. Quanstrom*, 555 So.2d 828, 830 (Fla.1990); *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145, 1150-51 (Fla.1985).

This case has been thoroughly investigated and litigated. Class Counsels' collective lodestars and costs are as follows:

| FIRM | LODESTAR | COSTS |
|------|----------|-------|
| **Zebersky Payne, LLP** | $149,975 | $19,500 |
| **Crowley Norman, LLP** | $344,582.50 | $24,878.10 |
| **Mazie Slater** | $179,989 | $44,074.61 |
| **The Monts Firm** | $45,500 | $5000 |
| **TOTALS:** | $720,046.50 | $93,452.71 |

Class Counsel will also incur additional time and litigation expenses as a result of briefing in connection with, and attending, the Final Approval hearing scheduled for November 16, 2018, and monitoring and ensuring the careful administration of the Settlement.[21] The various firms' lodestars and costs are supported by the attached declarations from representatives of each of the constituent law firms, along with the David Buckner Declaration ("Buckner Decl."), attached here as **Exhibit E**.

**V. Considering the following *Rowe/Johnson* factors, Class Counsels' lodestar and costs request, with an effective "multiplier" of 1.22,[22] is easily within the range approved as reasonable in this jurisdiction.**

"A lodestar figure that is based upon a reasonable number of hours spent on a case multiplied by a reasonable hourly rate is itself strongly presumed to be reasonable." *RTC v.*

---

class settlements under the statute. *See Barnhill v. Florida Microsoft Litig*, 905 So. 2d 195, 200 (Fla. 3d DCA 2005).

[21] Norman Decl. at ¶ 44; Zebersky Decl. at ¶ 15;

[22] Class Counsel arrived as this multiplier figure by subtracting $93,452.71 in costs from the agreed Fees and Costs award of $975,000; then, taking that difference, $881,547.29, as the net agreed fee amount for purposes of the multiplier calculation.

*Hallmark Builders, Inc.,* 996 F.2d 1144, 1150 (11th Cir. 1993)). Reasonableness of the fee is also evaluated by the so-called *Rowe/Johnson* factors, taken from *Johnson*, 488 F.2d 714, and adopted in *Rowe*, 472 So.2d 1145, and are now largely found in Florida Rule of Professional Conduct 4–1.5. *See Joyce v. Federated Nat. Ins. Co.*, 228 So. 3d 1122, 1126 (Fla. 2017).   These are,

(A)   the time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly;

(B)   the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(C)   the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;

(D)   the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;

(E)   the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;

(F)   the nature and length of the professional relationship with the client;

(G)   the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and,

(H)   whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.

*Id.*; *Rowe,* 472 So.2d 1145, 1150 (citing *Johnson* 488 F.2d 714, 717-719); *Quanstrom*, 555 So.2d 828 (Fla. 1990).

In this District, the factors taken from *Johnson* (and adopted in *Rowe* and the Florida Model Rules) are not exclusive in class actions. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001). Courts are encouraged to consider additional factors unique to the particular case. *Id.*

Besides attorney's fees, Federal Rule of Civil Procedure 23(h) specifies that "the court may award reasonable attorney's fees *and nontaxable costs* that are authorized by law." (emphasis added). Consistent with this provision, "[n]ontaxable costs are subjected to the same procedures in class suits as are fees." Newberg on Class Actions § 16:9 (5th ed.). Class Counsel therefore apply the same arguments (including the *Rowe/Johnson* factors) supporting the fee request to support the request for an award of agreed costs stated in the table above.

### A. The results Class Counsel obtained through the Settlement were exemplary and support awarding them the agreed Fees and Costs.

"Perhaps no better indicator of the quality of representation here exists than the result obtained."[23] "[V]indication of class-wide rights are [sic] generally more significant than relief granted for an isolated violation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). The benefits to the Settlement Class that Class Counsel obtained through the Settlement are extraordinary. The Settlement provides 100% relief to those Class Members who previously paid to have the Subject Watercraft repaired and provides 100% relief to those whose watercrafts were damaged but not yet repaired. Those who, as a preventive measure, replaced the allegedly defective Resonator with another, will also be eligible for 100% reimbursement. In addition, all Class Members will benefit from an extended warranty, settlement administration costs paid by BRP, and removal of the Resonator from the marketplace.[24] These

---

[23] *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 547–48 (S.D. Fla. 1988); *see also Montoya v. PNC Bank, N.A*., CASE No. 14-20474-CIV- GOODMAN, at *42 (S.D. Fla. Apr. 13, 2016) ("the result achieved by counsel is a major factor to consider in making a fee award").

[24] *See Poertner v. Gillette Co*., No. 6:12-CV-803-ORL-31DA, 2014 WL 4162771, at *5 (M.D. Fla. Aug. 21, 2014) ("In determining a reasonable fee…the Court is not limited by the actual amount of claims to be paid. Rather, the Court should consider both the monetary and non-monetary benefits to the class …the class also received a substantial equitable benefit by reason of Gillette's agreement to stop selling Ultra batteries) aff'd *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 626 (11th Cir. 2015); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243–44 (11th Cir. 2011) (rejecting objections to fee award because they "ignore the district court's finding that the

were the goals of this Action, and the Settlement provides more relief than would have been achieved in an individual action or at trial.[25] Achieving them underscores that the agreed Fee and Cost award is reasonable.

**B. Class Counsel expended significant time and labor to understand the weaknesses and strengths of the case and to achieve the benefits in the Settlement, which support awarding them the agreed Fees and Costs**.

Moreover, prosecuting and settling the claims in this Action demanded considerable time and labor. Class Counsels' taking on this representation and work on the Action also precluded representation and employment in other matters.[26]

Class Counsel began working on this case in April 2015 and spent ensuing months in pre-suit investigation and legal research prior to filing the Action in June 2017.[27] BRP thoroughly tested the complaint and legal theories stated in it, which required substantial briefing.[28] Class Counsel performed hundreds of hours of work leading up to the Settlement in this Action, including no less than seven rounds of document production by BRP (much of which was in French); bilateral written discovery; review and analysis of thousands of pages of documents; and corporate depositions.[29] Class Counsel also held several rounds of settlement talks and attended mediation.[30] The time and labor Class Counsel expended allowed them to understand the pros and

---

$1.5 million payment is designed to compensate the class counsel for the non-monetary benefits they achieved for the class—like company-wide policy changes and appliance and system replacements and repairs").

[25] *See Poertner*, 618 Fed. Appx. 624, 628 (approving claims-made settlement noting relief exceeded what class member may receive at trial).

[26] Norman Decl. at ¶ 45; Zebersky Decl. at ¶ 16.

[27] Norman Decl. at ¶¶ 9-14; Monts Decl. at ¶¶ 11-18.

[28] *See* ECF Nos. 18-19, 29, 33, 45, 48 and 49.

[29] Norman Decl. at ¶¶ 9-14; Monts Decl. at ¶¶ 11-18.

[30] *Id.* at ¶¶ 21-23.

cons and issues in the Action fully[31] and led to a comprehensive settlement for the benefit of approximately 30,000-40,000 Settlement Class Members in four states.

### C. Class Counsel efficiently leveraged their substantial experience in this difficult Action and request rates consistent with the marketplace, which support awarding them the agreed Fees and Costs.

Further, class actions are more complex than other litigation, and when they are successfully settled for substantial relief ample compensation is justified. By their nature, class actions are more complex cases and as Judge Posner famously wrote, "generate[] a host of problems."[32] Federal Rule of Civil Procedure 23 itself adds a layer of complexity that that simply does not exist in individual suits.[33] A court may amend its class certification order at any time up through judgment, making class certification in some sense always tentative. *See* Fed. R. Civ. P. 23(c)(1)(c). The rule also allows interim petitions to appeal the class certification order, which though rarely granted often lead to delays and require appellate briefing before a case even concludes. *See* Fed. R. Civ. P. 23(f). Because of this difficulty and complexity, class cases tend to require more attorneys, co-counsel conferences, and time than do individual cases, all of which are compensable.[34]

Adding to this inherent difficulty, multistate product defect class actions are particularly difficult.[35] At the outset of this case, there were substantial risks and difficulties and the outcome was far from assured. In this Action, Plaintiffs brought class warranty and other class claims, which

---

[31] *Id.* at ¶ 24.

[32] *Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 834 F.2d 677, 678 (7th Cir. 1987).

[33] *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

[34] *See* Buckner Decl. at ¶ 26; *see also Norman*, 836 F.2d 1292, 1302*; New England Tech. Inc. v. Sigma Tech Sales, Inc.*, 09-61347-CIV, 2010 WL 3958644, at *6 (S.D. Fla. Oct. 7, 2010).

[35] *See, e.g., In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1014 (7th Cir. 2002).

often entail thorny issues of privity, varying misrepresentations, opportunity to cure, manifestation of the defect, and pre-suit notice, any one of which defendants might raise to attempt to derail certification, especially in a multistate context such as this.[36] Besides these and the inherent difficulty of any class action, multistate product defect class actions also raise thorny issues of standing and representation across state and product model lines.[37] BRP indeed argued both these points successfully.[38]

These issues made this Action difficult and required experienced and skilled counsel to navigate them. Class Counsels' hourly rates correlate to skill, efficiency, and experience that was demonstrated in investigating, litigating, and settling this difficult Action;[39] they are consistent with what they have previously received in other cases;[40] and they are consistent with rates in the local market for complex and class litigation.[41] Based on their attached declarations, Class Counsel are highly experienced attorneys,[42] having substantial experience in class and complex litigation and watercraft defect litigation as was necessary to prosecute this case.[43] Class Counsel handled the case efficiently,[44] winning a comprehensive settlement just fourteen months from commencing suit, in the face of extremely able and diligent attorneys representing BRP in a case

---

[36] Buckner Decl. at 27; *see also Hummel v. Tamko Bldg. Products, Inc.*, 303 F. Supp. 3d 1288, 1298 (M.D. Fla. 2017); *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1238 (11th Cir. 2016).

[37] *See* ECF No. 45 at 13-15; *see also In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012.

[38] *See* ECF No. 45 at 13-15 and ECF No. 19.

[39] Buckner Decl. at ¶ 29; *see also Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir. 1988); *Norman*, 836 F .2d at 1299 (noting hourly rates correlate the experience and skill).

[40] Norman Decl. at ¶ 41; Zebersky Decl. at ¶ 7; Mendelsohn Decl. at ¶ 16; Monts Decl. at ¶ 9.

[41] Bruckner Decl. at ¶¶ 11, 25.

[42] Monts Decl. at ¶ 3 (1984 bar admission); Norman Decl. at ¶ 1 (1993); Zebersky Decl. at ¶ 4 (1991).

[43] *See* Exhibits A through D.

[44] *See Norman*, 836 F .2d at 1301.

presenting difficult issues.[45]  Surmounting the difficulties in the Action efficiently and winning the benefits for the Class under the Settlement against well-heeled defense and corporate counsel exemplify a significant achievement further supporting the requested Fees and Costs.

> ### D. Class Counsel undertook this risky Action solely on a contingent basis, which supports awarding them the agreed Fees and Costs.

The difficulties inherent in the Action also added to the risks Class Counsel undertook in bringing this Action.[46] Plaintiffs were not charged an hourly rate. Unlike BRP's counsel, who were compensated on a current basis, Class Counsel have received no compensation over the past 3 years of investigating and litigating the Action and have advanced all costs in providing legal representation to Plaintiffs and the Class.[47]

"Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."[48]  "Mindful of the need to attract counsel of…high caliber, courts [in this District] have recognized the importance of providing incentives to experienced counsel who take on complex litigation cases on a contingent fee basis so those cases can be prosecuted both efficiently and effectively."[49]

---

[45] Defense counsel included attorneys from large, well-heeled firms such as Rumberger, Kirk & Caldwell, P.A., and a large multinational corporate defendant. In assessing the quality of representation by Class Counsel, the Court should consider the quality of these opposing counsel. *See Walco*, 975 F. Supp. at 1472; *Johnson*, 488 F.2d at 718; *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992).

[46] This factor recognizes that counsel should be rewarded for taking on a case with "thorny factual circumstances," or the possible negative financial outcome of a case. *In re Sunbeam*, 176 F. Supp. 2d at 1336. This risk is evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit – not retroactively. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 112 (3d Cir. 1976); *Walco*, 975 F. Supp. at 1473. Moreover, "[t]he point at which plaintiffs settle with defendants … is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motor Corp.*, 860 F.2d 250, 258 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989).

[47] Norman Decl. at ¶ 44; Zebersky Decl. at ¶ 14.

[48] *Ressler,* 149 F.R.D. 651, 656.

[49] *Wolff v. Cash 4 Titles,* No. 03-22778-CIV, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012).

Class Counsel prosecuted this case entirely on a contingent-fee basis,[50] which is what the local marketplace requires to obtain competent counsel.[51] As a corollary to this and to the difficulty of the issues in the Action, in undertaking the Action, Class Counsel assumed a significant risk of nonpayment or underpayment,[52] which there was little, if any, way to mitigate.[53] This was not a case where any recovery was assured. As stated above, this Action presented a number of legal issues and challenges regarding class certification and multistate representation. There was no guarantee that the Class Members would obtain any relief from BRP, which would have resulted in Class Counsel receiving nothing for their work on behalf of Plaintiffs and the Class.

In these circumstances, it is an established practice to reward attorneys for taking the risk of non-payment by paying them a bonus.[54] As another member of this Court observed years ago,

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer…A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures.  If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, *especially in light of the risks of recovering nothing.*

*Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988) (emphasis added). In light of the risk Class Counsel undertook in representing Plaintiffs and the Class, a modest multiplier of 1.22 is justified here, and falls well within the range of what other courts have

---

[50] Norman Decl. at ¶ 45; Mendelsohn Decl. at ¶ 21; Zebersky Decl. at ¶17.
[51] Buckner Decl. at ¶ 32.
[52] Mendelsohn Decl. at ¶ 21; Zebersky Decl. at ¶18; Norman Decl. at ¶ 45
[53] *Id.*
[54] *See Quanstrom*, 555 So.2d 828, 834; *see also Joyce*, 228 So. 3d 1122, 1123 (reaffirming *Quanstrom* and *Rowe*; rejecting any requirement that a multiplier might only apply in "rare" and "exceptional" circumstances); *see also In re Sunbeam*, 176 F. Supp. 2d at 1335 (finding "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees").

16

awarded.[55] An enhancement also serves the purposes of the state deceptive trade practices acts, whose goals are to protect the consuming public.[56] Affording a multiplier in cases such as this encourages attorneys to take on risky cases to better protect the consuming public.

*In sum*, the foregoing factors—deference to the settled fee, the labor required, the skill and experience of Class Counsel, the customary awards and rates, the risk and difficulty of the case, and the outstanding results Class Counsel achieved—clearly confirm the request for agreed Fees and Cost is reasonable, and, therefore this Court should award them to Class Counsel.

**VI.    The agreed Incentive Awards are warranted because each Plaintiff participated in the Action, took risks, and achieved a substantial result for the Class they represented**.

In addition to the Fees and Cost award, as stated above, the Settlement calls for Incentive Awards to each named Plaintiff. As with agreements on fees, agreements on incentive awards are commonplace in class settlements.

Incentive awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."[57]  "[T]here is ample precedent for awarding incentive compensation to class representatives…"[58] "Courts have consistently found

---

[55] *See, e.g., Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (noting that lodestar multipliers "in large and complicated class actions' range from 2.26 to 4.5" and that "three appears to be the average"); *Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-CV-20880-UU, 2016 WL 10518902, at *11 (S.D. F la. Oct. 17, 2016) (3.8 multiplier); *Barnhill.*, 905 So. 2d 195, 200 (FDUTPA class settlement, 1.77. multiplier); *In re Progressive Ins. Corp. Underwriting & Rating Practices Litig.,* 2008 WL 11348505, at *7 (noting multiplier of 1.63 is well below the average for class settlements); *see also* Buckner Decl. at ¶ 33 (stating Class Counsel warranted a multiplier of 2.0-2.5).

[56] *See Quanstrom*, 555 So. 2d 828, 834 (Fla. 1990) (criteria for determining a reasonable fee and a multiplier "must be consistent with the purpose of the fee-authorizing statute or rule"). FDUTPA's express purpose is to protect the consuming public at large. *See* § 501.202(2), Fla. Stat.

[57] *Tornes v. Bank of America, N.A. (In re Checking Account Overdraft Litig.)*, 830 F. Supp. 2d 1330, 1357 (S.D. Fla. 2011) (quoting *Allapattah.*, 454 F.Supp.2d at 1218).

[58] *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010).

service awards to be an efficient and productive way to encourage members of a class to become class representatives."[59]

Some factors courts consider in deciding incentive awards include: (1) the degree and manner of involvement of named plaintiffs in the case;[60] (2) the risks they incurred during the class action litigation and trial;[61] (3) incentive awards granted in similar cases;[62] and (4) the benefits named plaintiffs achieved for the class[63] and incentivizing others to do the same.[64] Each of these factors is present here, and each supports the agreed Incentive Award to each named Plaintiff:

### A.   Each Plaintiff was actively involved in the Action and assisted Class Counsel.

As confirmed in their declarations filed with this Motion,[65] each Plaintiff's involvement in the case has been extensive. Each named Plaintiff produced documents, reviewed court filings, and consulted with Class Counsel about the case on numerous occasions, including communications during Settlement negotiations. And some of the named plaintiffs also responded to discovery requests and had their watercraft inspected.  This participation shows they were involved in this case extensively, which in turn justifies an incentive award.[66]

---

[59] *Gevaerts v. TD Bank*, 1:14-CV-20744-RLR, 2015 WL 6751061, at *9 (S.D. Fla. Nov. 5, 2015.

[60] *See Allapattah*, 454 F. Supp. 2d at 1218; *see also Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998).

[61] *Allapattah*, 454 F. Supp. 2d at 1218.

[62] *In re AOL Time Warner ERISA Litig.*, No. 02 CV. 8853 (SWK), 2007 WL 3145111, at *2 (S.D.N.Y. Oct. 26, 2007).

[63] *Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV-GOODMAN, 2016 WL 1529902, at *2, *18 (S.D. Fla. Apr. 13, 2016); *see also Ingram*, 200 F.R.D. 685, 694 (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award.").

[64] *Gevaerts*, 2015 WL 6751061, at *9.

[65] *See* **Exhibit F**, Declaration of Brian Feldman; **Exhibit G**, Declaration of Daniel Dickerson; **Exhibit H**, Declaration of David Lombardi; and **Exhibit I,** Declaration of Deborah Dunn.

[66] *See, e.g.*, *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d. 766, 787 (N.D. Ohio 2010) ($5,000 incentive awards); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 258–59 (D.N.J. 2005)

**B.     Each named Plaintiff took a risk in serving as class representative**.

Moreover, akin to Class Counsel, each Plaintiff bore significant risk that his or her investment of time in the case would be for naught. As noted above the underlying issues in the case were thorny. Also, serving as a named plaintiff in a class action lawsuit against a highly resourceful multinational company like BRP, would likely cause many individuals pause. Under these circumstances, there is a palpable risk of personal liability, financial loss, and of unwanted notoriety. Each Plaintiff voluntarily commenced and continued with the Action despite the foregoing risks. Doing so supports an incentive award.[67]

**C.     Each named Plaintiff helped achieve an outstanding result for the Class.**

As noted above, the results achieved in this Settlement have been extraordinary. By their participation, named Plaintiffs contributed to achieving substantial relief for the Settlement Class. An incentive award not only rewards this significant achievement, but also incentivizes other plaintiffs to take on difficult, but beneficial litigation, to achieve outstanding results in class actions.[68]

---

($10,000, $3,000, and $1000 incentive awards); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 449 (S.D. Tex. 1999) (approving higher incentive award to plaintiffs who produced personal records, appeared for lengthy depositions, and attended hearings); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 357–58 (N.D. Ga. 1993) (approving incentive awards of $5,000 to plaintiffs who appeared for deposition and $2,500 to plaintiffs who produced documents in discovery).

[67]  *See In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991); *Allapattah Servs.*, 454 F. Supp. 2d 1185, 1222; *Wilson v. Airborne, Inc.*, No. EDCV 07–770–VAP (OPx), 2008 WL 3854963, *13 (C.D.Cal. Aug. 13, 2008).
[68]  *See Loudermilk Servs., Inc. v. Marathon Petroleum Co. LLC*, 623 F. Supp. 2d 713, 727 (S.D.W. Va. 2009); *Gevaerts*, 2015 WL 6751061, at *9; *see also* Newberg on Class Actions § 17:3 (5th ed.) (incentive awards to class plaintiffs "serve to incentivize them to perform this function"); *accord* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L. REV. 1303, 1310 (2006).

**D.     The agreed Incentive Awards are consistent with awards in other cases.**

Finally, the agreed Incentive Awards are consistent with awards in other cases.[69] A study on incentive awards for class action plaintiffs also shows that amount requested is below average awards in other cases. Analysis of incentive payments between 1993 and 2002 (374 cases) found that the median incentive payment then was $4,357, and the average was $15,992. *In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection Practices Act (FDCPA) Litig.*, No. 2:13-MD-2426-DBH, 2016 WL 543137, at *10 (D. Me. Feb. 10, 2016) (citing Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1308 (2006)). The Incentive Awards to named Plaintiffs fall well within this range and should be awarded.

## VII.   CONCLUSION

Class Counsel took this case solely on a contingent basis. Class Counsel have thoroughly investigated this action and worked assiduously, spending numerous hours with the participation of each Plaintiff to prosecute his or her claim individually and on behalf of the proposed class. As a result of these efforts, Class Counsel was able to negotiate a settlement that secured a significant result for approximately 30,000-40,000 class members spanning four states.  The settlement achieves comprehensive substantive relief tailored to the bases and goals of this action.

---

[69] *See, e.g., Brna v. Isle of Capri Casinos Inc.*, Case Number: 17-60144-CIV-MORENO, at *7 (S.D. Fla. Feb. 20, 2018) ($2500 incentive awards ); *Curry v. AvMed, Inc., No.* 10-CV-24513-JLK, 2014 WL 7801286, at *3 (S.D. Fla. Feb. 28, 2014)($5,000); *Wilson v. EverBank,* No. 14-CIV-22264, 2016 WL 457011, at *15 (S.D. Fla. Feb. 3, 2016) ($5,000.00); *Leslie v. Conseco Life Ins. Co.*, No. 9:11-CV-81035-KAM, 2014 WL 12479931, at *2 (S.D. Fla. July 25, 2014)($5000 awarded, granting ECF. No 64); *Burrows v. Purchasing Power, LLC*, No. 1: 12-CV-22800, 2013 WL 10167232, at *8 (S.D. Fla. Oct. 7, 2013) ($3,500); and *Merkle v. Vista Healthplan, Inc.*, No. 10-80347-CIV, 2010 WL 11426151, at *5 (S.D. Fla. Aug. 17, 2010) ($7,500 and $85,000 incentive awards granted).

The accompanying submissions, the record, and the arguments above, deference to the Parties' arm's length agreement on fees and costs, the labor required of Class Counsel, the skill and experience of Class Counsel, the customary awards and rates in this District, the risk and difficulty of the case, and the outstanding results Class Counsel achieved, all clearly confirm the above request for agreed Fees and Costs is reasonable. Likewise, the extensive case involvement of each Plaintiff, the risks inherent in serving as a class representative, and the results named Plaintiffs achieved through the Settlement clearly support the above request for the agreed Incentive Award for each named Plaintiff.

This Motion should be granted.

## L.R. 7.1(a)(3) CERTIFICATION

In accordance with Local Rule 7.1(a)(3), I certify that Plaintiffs' counsel Edward Zebersky conferred with Defendant's counsel Douglas B. Brown by email on October 18-19, 2018, and he communicated that Defendant did not oppose the relief requested in this motion.


Date: October 19, 2018

Respectfully submitted,


/s/ *Edward H. Zebersky*
Edward H. Zebersky (FBN 908370)
Mark S. Fistos (FBN 909191)
**ZEBERSKY PAYNE, LLP**
110 Southeast 6th Street, Suite 2150
Ft. Lauderdale, FL 33301
ezebersky@zpllp.com; mfistos@zpllp.com
Telephone:  954-989-6333
Facsimile:  954-989-7781

Matthew R. Mendelsohn *(Pro Hac Vice)*
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: 973-228-9898

Richard E. Norman (*Pro Hac Vice*)
R. Martin Weber, Jr. (*Pro Hac Vice*)
**CROWLEY NORMAN, LLP**
3 Riverway, Suite 1775
Houston, Texas 77056
Telephone: 713-650-1771

Britton D. Monts *(Pro Hac Vice)*
**THE MONTS FIRM**
Frost Bank Tower
401 Congress Ave., #1540
Austin, TX 78701
Telephone: 512-474-6092

*Attorneys for Plaintiffs and the Class*


## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2018, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system which will automatically send notification to all attorneys of

record.

/s/ *Edward H. Zebersky*
Edward H. Zebersky