**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 17-cv-61150-DIMITROULEAS/Snow**

BRIAN FELDMAN AND DANIEL
DICKERSON, individually and on behalf
of a class of similarly situated individuals,

      Plaintiffs,

vs.

BRP US, INC., BOMBARDIER
RECREATIONAL PRODUCTS, INC.
and BRP, INC.,

      Defendant.

_____/

**PLAINTIFFS' *UNOPPOSED* MOTION AND MEMORANDUM IN SUPPORT OF FINAL
APPROVAL OF CLASS SETTLEMENT**

Plaintiffs move this Court for an order, substantially in the form of **Exhibit A** attached hereto, finally approving the Parties' class action settlement, including the awards of attorneys' fees and costs and incentive awards to each Plaintiff, which have been applied for separately. (ECF No. 68).   In support, they state the following:

## I.   INTRODUCTION

**Preliminary approval.** Plaintiffs filed this putative class action on June 7, 2017, alleging that certain models of Defendant Bombardier Recreational Products, Inc.'s ("Defendant" or "BRP") Sea-Doo® personal watercraft ("Subject Watercraft")[1] suffer from a defect in the exhaust resonator ("Resonator Defect"), which causes various forms of damage ("Watercraft Damage"). After substantial investigation and litigation, on July 20, 2018, the Parties executed a final Stipulation and Settlement Agreement ("Settlement" or "Agreement") (ECF No. 58-1). Under the terms of the Settlement, a second amended complaint (ECF No. 59-1) spanning the four Class Member states of Florida, New York, New Jersey, and Texas, was filed on August 9, 2018. The Court preliminarily approved the Settlement in all respects certifying a settlement Class on August 13, 2018 (ECF No. 64).   The Settlement Class the Court certified was defined as,

> All current and former owners of the Subject Watercraft purchased in the states of Florida, New York, New Jersey, and Texas.

> Excluded from the Class are: (1) Defendants, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; and (2) the Judge to whom this case is assigned.[2]

**Notices.** Ample notice of the Settlement has been provided.   As per the Court's preliminary approval order, individual notice and a claim form were mailed directly to approximately 38,579 of these Class Members and a Settlement website was established. Both

---

[1] Unless otherwise defined in this Motion, all capitalized terms in this Motion have the meanings set forth in the Agreement.

[2] (ECF No. 64 at ¶ 5).

these forms of notice (i) advised class members how to object (ii) offered them the opportunity to opt out and appear in the case and (iii) stated that Class Counsel would seek attorney's fees and incentive awards and the amounts they would seek for each. Class Counsel have applied for these awards in a separate filing. (ECF No. 68).   To date, to Plaintiffs' knowledge, only two objections and one opt-out out of a class of approximately 40,000 members have been made.

**Relief.**   "Federal courts have long recognized a strong policy and presumption in favor of class action settlements." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011).   The core of this Settlement is Defendant BRP's agreement to provide substantive relief to Class Members.   BRP has agreed to provide extended warranties[3] to all Class Members, reimburse Class Members for prior repairs made, and pay repair costs of those Class Members whose Subject Watercraft still need repair as a result of the subject Resonator. Under the Settlement, BRP has also agreed to pay all Settlement administration costs and provide an additional notice to Class Members advising them of the potential Resonator Defect, what to do if problems arise, and that claims relating to the potential Resonator Defect will now be covered under warranty for two years from the Effective Date of the Settlement. If finally approved, this Settlement will make relief available to approximately 40,000 Class Members spanning four states and will conclude this extensive litigation between the Parties.   The Settlement does not release any claims for personal injuries.

**The record.** Plaintiffs and Class Counsel have already submitted numerous declarations and filings in the record supporting the fairness and reasonableness of the Settlement,[4] including filings supporting the fairness and reasonableness of the their separately filed application for the

---

[3] Although referred to in the motion as an "extended warranty," in actuality the Settlement provides for a "new" warranty, since the Resonator issue complained of, and made the basis of this Action, was never a covered warranty item, as explained in more detail below.

[4] *See* (ECF No. 58-2).

agreed attorney's fees, costs, and incentive awards.[5]   In granting preliminary approval, the Court already found that the Settlement was "entered into in good faith [and] free of collusion." (ECF No. 64 at ¶ 4). Based on the record, notice to the Class, the Settlement relief, the strong judicial policy favoring settlement of class actions, and the additional discussion below, the Settlement merits final approval.

## II.   THE SETTLEMENT SHOULD BE FINALLY APPROVED.

The two primary criteria of final approval of class settlements examine (i) whether the best practicable notice was provided to the proposed settlement class and (ii) whether the proposed settlement is ultimately fair, reasonable, and adequate.[6]

Both criteria are met here.

### A.   The best practicable notice was provided to the Class, giving the Court personal jurisdiction over Class Members.

Federal Rule Civil Procedure 23(e)(1), provides that for a class action settlement "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal." To be reasonable, "due process does not require that class members actually receive notice."[7] The notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[8] The multiple forms and avenues of notices of the Settlement, including First Class Mail, website, email, and IVR toll-free telephone number system

---

[5] *See* (ECF Nos. 68-1 through 68-9).

[6] *See Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016).

[7] *Lopez v. Hayes Robertson Grp., Inc.*, No. 1310004, 2015 WL 5726940, at *6 (S.D. Fla. Sept. 29, 2015) (citing *Juris v. Inamed Corp.*, 685 F. 3d 1294, 1321 (11th Cir. 2012)).

[8] *Lee v. Ocwen Loan Servicing*, LLC, CASE NO. 14-CV-60649-GOODMAN, at *9 (S.D. Fla. Sep. 14, 2015) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)) and (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)).

made available to the Class clearly satisfied Rule 23 and Due Process.[9] As such, "this Court has personal jurisdiction over all of the Settlement Class Members."[10]

1.    **Dissemination of the Notice**.   In its Preliminary Approval Order (ECF No. 64), the Court approved the content of the agreed-upon Notice and its method of dissemination and found that they met Due Process.[11]   The Notice plan ordered by the Court has been effectuated in compliance with the Court's orders.[12] "When the names and addresses of most class members are known, notice by mail…is preferred,"[13] and courts find Due Process is satisfied.[14] Accordingly, as stated in the Heffler declaration attached hereto as **Exhibit B**, on September 24, 2018, the Settlement Administrator at BRP's sole expense provided individual mailed Notices and Claim Forms via First Class Mail to approximately 38,579 members of the Class.[15] Prior to mailing, the Settlement Administrator updated the notice mailing list through the USPS National Change of Address ("NCOA") database and through a professional address location service.[16] As required

---

[9] *See Juris*, 685 F.3d 1294, 1317; *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007), *Montoya v. PNC Bank, N.A.*, CASE No. 14-20474-CIV- GOODMAN, at *17 (S.D. Fla. Apr. 13, 2016), and *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1262 (S.D. Fla. 2016).

[10] *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011); *see also David v. American Suzuki Motor Corp.*, 2010 WL 1628362, 2 (S.D. Fla. 2010) (finding personal "jurisdiction over the Settlement Class because its members were provided with proper notice of the proposed Settlement, its consequences, their right to be excluded, and their right to be heard"); *Perez v. Asurion Corp.*, 501 F.Supp.2d 1360, 1377 (S.D. Fla. 2007)(same).

[11] (ECF No. 63 at ¶12).

[12] (ECF No. 63 at ¶¶ 10-12, 23; ECF No. 67).

[13] David F. Herr, Manual for Complex Litigation § 21.311 at 287 (4th ed. 2004); *see Pigford v. Veneman*, 355 F. Supp. 2d 148, 162 (D.D.C. 2005) (when money is at stake, Due Process is implicated, and as a corollary, "[i]f all (or most) class members can be individually identified and located, courts will [typically] require that individual notice be sent via mail or other direct means"); *cf. Mullane*, 339 U.S. 306, 313.

[14] *See Diaz v. Hillsborough Cty. Hosp. Auth.,* No. 8:90-CV-120-T-25B, 2000 WL 1682918, at *6 (M.D. Fla. Aug. 7, 2000).

[15] *See* Exhibit B, Declaration of Jonathan Shaffer from the Heffler Claims Group (Heffler Decl.) at ¶ 12.

[16] Heffler Decl. at ¶ 10.

by the Court, any Notices returned as undeliverable have been re-sent if forwarding or additional addresses were ascertainable.[17]

      Distribution of the mailed Notice was in addition to (i) the Notice, Settlement Agreement, and other case materials, which have appeared on the settlement website, www.brpresonatorsettlement.com., since September 24, 2018, and (ii) the approximately 15,000 emails the Settlement Administrator sent to potential Class Members on that date.[18]   Moreover, in compliance with the Class Action Fairness Act of 2005 ("CAFA"), including 28 U.S.C. §§ 1715, BRP through its counsel provided notice of this Settlement to the U.S. Attorney General and the Attorneys General for the Class Member states of Florida, New York, New Jersey, and Texas.[19] The Settlement Administrator continues to maintain the settlement website, (containing the Settlement Agreement, Notice, and Claim Form, among other things) and a settlement call center, accessed via a toll-free number listed in the Notice, which also went "live" on September 24, 2018.[20]

      **2.**     **Content of the Notice.**  Due Process is satisfied when notice describes "the substantive claims . . . [and] contained information reasonably necessary to make a decision to remain a class member and be bound by the final judgment."[21] The Notice in this case unquestionably satisfied this standard. The Notice mailed to Settlement Class Members and appearing on the settlement website[22] were substantially the same in all material respects[23] to the

---

[17] *Id*. at ¶¶ 13-14.

[18] *Id*. at ¶¶ 7, 12.

[19] (ECF No. 65).

[20] Heffler Decl. at ¶ 8.

[21] *In re Checking Account Overdraft Litig*., 830 F. Supp. 2d at 1342 (quoting *In re Nissan Motor Corp. Antitrust Litig*., 552 F.2d 1088, 1104-05 (5th Cir. 1977)).

[22] http://www.brpresonatorsettlement.com/DocumentHandler.ashx?DocPath=/Documents /Feldman_v_BRP_Long_Form_Notice_8_24_18_v9_Printer_Version.pdf.

[23] Heffler Decl. at ¶ 4; (ECF No. 58-1).

notice that was approved by the Court in its Preliminary Approval Order.[24]   The mailed Notice was formatted to be similar in style and approach to the class notice models available on the Federal Judicial Center's website.[25] The Notice mailed to each Class Member and appearing on the settlement website described, among other things: the nature of the case, the Class definition, and the claims and defenses; the possibility to appear with or without counsel; the timing and manner by which to object; the Fairness Hearing location, date and time; the stakes involved; that Class Members would be bound and how they would be bound; the relief afforded and how to claim it; the amounts of attorneys' fees and incentive awards which would be requested; what was required to participate in the Settlement; how to opt out and the effect of doing so; and where to call (toll-free) to get more information.[26]

In light of the foregoing, the Court should easily find that the content and the multiple forms and avenues of notices of the Settlement, including First Class Mail, website, email, and IVR toll-free telephone number system made available to the Class met or exceeded Due Process and the requirements in Federal Rule of Civil Procedure 23(e), and the Court has personal jurisdiction over the Class.

**B. The settlement is fair, reasonable and adequate.**

**1. Judicial policy favors settlement of class actions.** "Federal courts have long recognized a strong policy and presumption in favor of class action settlements."[27]   Courts in the Eleventh Circuit hold that analysis of class-action settlement should be "informed by th[is] strong

---

[24] (ECF No. 64).

[25] https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction. As the *Manual on Complex Litigation* notes: "The FJC has tested the form notices for comprehension and identified some principles that will be of value to those drafting such notices." Herr, David, *Manual Complex Lit.* § 21.3, p. 286, n 880 (4h Ed.).

[26] Heffler Decl. at ¶ 4; (ECF No. 58-1); http://www.brpresonatorsettlement.com/DocumentHandler.ashx?DocPath=/Documents/Feldman_v_BRP_Long_Form_Notice_8_24_18_v9_Printer_Version.pdf.

[27] *In re Checking Account Overdraft Litig.*, 830 F. Supp. at 1341 (S.D. Fla. 2011).

judicial policy favoring settlements as well as the realization that compromise is the essence of settlement."[28]  "Settlement has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice…"[29]  "The law favors compromise in large part because they are often a speedy and efficient resolution of long, complex and expensive litigations."[30]  "Litigants should be encouraged to determine their respective rights between themselves."[31]

Also, "[i]n evaluating a settlement's fairness…[t]he trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might [be] gained.'"[32]  "Above all, the court must be mindful that 'inherent in compromise is a yielding of absolutes and an abandoning of highest hopes'";[33] and that there exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation of being most complex."[34]  Moreover, where, as here, the Settlement previously has been preliminarily approved in its entirety—and was the result of arm's-length negotiations—it is entitled to a presumption of fairness and reasonableness,[35] and "an objector must overcome a heavy burden to demonstrate its unreasonableness."[36]

---

[28] *Id.* (citations omitted); *see also LiPuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005); *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *see also Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 538 (S.D. Fla. 1988) (citations omitted).

[29] *Behrens,* 118 F.R.D. at 538.

[30] *Id.*

[31] *Id.* (quoting *Cotton* 559 F.2d at 1331)(citation omitted).

[32] *Ass'n for Disabled Ams., Inc. v. Amoco*, *Oil Co.*, 211 F.R.D. 457, 468 (S.D. Fla. 2002) (citing *Cotton*, 559 F.2d at 1330).

[33] *Amoco,* 211 F.R.D. at 468 (citation omitted).

[34] *Id*. at 466; *Access Now*, 2002 WL 1162422 *4.

[35] *See Amoco,* 211 F.R.D. 457, 467 (citations omitted); *see also Diakos v. HSS Sys., LLC*, CV 14-61784-CIV, 2016 WL 3702698, at *3 (S.D. Fla. Feb. 5, 2016); *Hugo on behalf of BankAtlantic Bancorp, Inc. v. Levan*, 08-61018-CIV, 2011 WL 13173025, at *5 (S.D. Fla. July 12, 2011)*.

[36] *Levan*, 2011 WL 13173025, at *5.

**1.  The Settlement satisfies the *Bennett* factors.**  With these policies in mind, in determining whether a proposed class action settlement is fair, adequate and reasonable, courts in the Eleventh Circuit interpret and apply the following six factors, taken from *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir.1984):[37] "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved."[38]

Courts have emphasized that the above factors should not be applied in a formalistic fashion.[39]  "Not every factor must weigh in favor of settlement for the trial judge to grant final approval, rather, the court should consider the totality of these factors in light of the particular circumstances."[40]  "[T]he fairness of a settlement is left to the sound discretion of the court and will not be overturned absent a clear showing of abuse of that discretion."[41]  "In evaluating these considerations, the Court must not try the case on the merits."[42]  "In addition, the judgment of experienced counsel is relevant to approval."[43]  Indeed, the Court is entitled to rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'"[44]

---

[37]  *Id.*

[38]  *Borcea v. Carnival Corp*. 238 F.R.D. 664, 672 -673 (S.D. Fla. 2006) (citing *Bennett*, 737 F.2d 982, 986).

[39]  *Levan*, 2011 WL 13173025, at *5.

[40]  4 Newberg on Class Actions § 13:48 (5th ed.) (Weslaw).

[41]  *Levan*, 2011 WL 13173025, at *5.

[42]  *Amoco*, 3211 F.R.D. at 467 (citation omitted).

[43]  *Borcea,* 238 F.R.D. 664, 672 -673 (citing *Cotton*, 559 F.2d 1326, 1331 (finding the trial court is "entitled to rely on the judgment of experienced counsel for the parties" in evaluating a settlement) (citations omitted).

[44]  *Id.* (citation omitted); *accord David v. American Suzuki Motor Corp*., 2010 WL 1628362, 6 n 9 (S.D. Fla. 2010) (citation omitted).

a. **The duration and stage of the proceedings enabled the Parties to understand the strengths and weakness of their positions fully, supporting final approval.**

In examining the *Bennett* factors, courts often address the overarching question of whether or not the settlement has any indicia of fraud or collusion by the parties or their counsel.[45]   This Settlement clearly does not. "This certainly was not a 'file and settle'" case.[46] This Settlement was reached at arm's length and only after extensive litigation, discovery and negotiations, which gave all Parties sufficient information to evaluate their respective, diverse positions adequately and realistically.[47]

**Pre-suit investigation.**   Class Counsel began working on this case in April 2016.[48] Class Counsel spent months in pre-suit investigation and legal research.[49] Prior to filing suit, they were contacted by owners of the Subject Watercraft who complained about what counsel eventually learned to be an alleged defect in the exhaust resonator, causing it to melt under certain conditions and the Subject Watercraft to take on water.[50] After following up on these concerns and after several months of investigation by counsel, Plaintiffs filed the complaint in this Court on June 7, 2017, as a putative class action, alleging the 2010 to 2017 model years of the Subject Watercraft manufactured and marketed by BRP suffered from an exhaust resonator defect in material ("Resonator Defect") present when the watercrafts left the manufacturer, which had caused Watercraft Damage.[51]   Based on these alleged facts and others, Plaintiffs pleaded claims for breach

---

[45] *See Francisco v. Numismatic Guaranty Corp. of America,* 2008 WL 649124, at *5 (S.D. Fla. 2008).
[46] *David v. American Suzuki Motor Corp*., 2010 WL 1628362, 6 (S.D. Fla. 2010).
[47] *See Francisco,* 2008 WL 649124, at *11 (collecting cases).
[48] *See* (ECF No. 58-2) Declaration of Richard E. Norman ("Norman Decl.") (collected with other declarations in ECF No. 58-2).
[49] (Norman Decl. ¶¶ 9-13).
[50] (*Id*. ¶¶ 10, 12).
[51] (*Id*. at ¶ 14).

of express warranty, breach of implied warranty, violations of the Magnuson-Moss Warranty Act, unjust enrichment, and violations of the deceptive trade practice acts in Florida and New York.[52]

**Testing the case theory.** Defendant[53] has thoroughly tested the complaint and legal theories stated in it. On August 14, 2017, BRP filed a 33-page motion to dismiss the complaint (ECF No. 19), supported by over 400 pages of exhibits. (ECF No. 18). Plaintiffs filed an equally lengthy response to the motion (ECF No. 29) to which Defendant replied. (ECF No. 33). The Court granted in part and denied in part the motion on March 28, 2018. (ECF No. 45). Plaintiffs filed a motion to reconsider the Court's dismissal order on April 13, 2018, attaching a proposed amended complaint. (ECF No. 48).[54] Five days later, Defendant filed its Answer. (ECF No. 49).

**Extensive discovery.** Each Party also engaged in extensive investigation and discovery to explore and develop its position that in turn led to a thorough review of the strength and weaknesses of each litigant's position prior to reaching a compromise of the Action. Several attorneys among Class Counsel had previously investigated and successfully resolved a class action concerning another alleged defect in Sea-Doo® personal watercrafts and were able to bring that experience to bear in the investigation and prosecution of this case.[55] In the discovery and investigation process of the Actions, Class Counsel performed hundreds of hours of work leading up to the proposed settlement in this case.  Class Counsel retained and consulted industry experts.[56] From early October 2017 through May 2018, the Parties exchanged Rule 26 disclosures;

---

[52] (ECF No. 1 ¶¶ 7, 55-123). A second amended complaint was later filed as part of the settlement.

[53] After discussions among the original Parties, on July 7, 2017, Plaintiffs filed a notice of voluntary dismissal, dismissing original Defendants BRP, Inc., and BRP US, Inc., without prejudice, leaving BRP the only remaining defendant. (ECF No. 12).

[54] The Court later denied this motion as moot pending the outcome of the settlement negotiations. (ECF No. 51).

[55] (Norman Decl. ¶ 30).

[56] (*Id*. ¶ 18).

issued bilateral written discovery; and attended depositions.[57] And BRP produced approximately seven rounds of documents.[58] Class Counsel took the deposition of Defendant's Fed. R. Civ. P. 30(b)(6) designees in Montreal, Canada, on May 31, 2018.[59] Class Counsel reviewed and analyzed thousands of pages of documents, including consumer complaints, manuals, photos, testing reports, warranty data, quality assurance materials, engineering and design data, marketing and sales information, and other business records pertaining to the warranting, design, sale, and marking of the Subject Watercraft with the alleged Resonator Defect.[60] Complicating matters further, many of the most important documents produced were in French and required time-intensive translation.[61]

**Informed, arm's length negotiations.** The Parties began discussing potential resolution of the case in February of 2018. On April 17, 2018, the Parties held a full day meeting in New York City to explore whether settlement was possible, which was attended by Class Counsel Richard Norman, Edward Zebersky, and Matthew Mendelsohn, along with Defense Counsel Doug Brown, Scott Sarason, and BRP corporate representatives.[62] During these discussions, the Parties shared information regarding the potential class size, and information regarding the scope and severity of the problems resulting from alleged Resonator Defect. They also exchanged their relative positions regarding a proposed settlement structure that would form the initial skeleton of a final deal. Thereafter the Parties continued discussions on the terms of potential Settlement.[63]

---

[57] (*Id.*).
[58] (*Id.*).
[59] (*Id.*).
[60] (*Id.*).
[61] (*Id.*).
[62] (Norman Decl. ¶ 18).
[63] (*Id.*).

They held another in-person meeting on May 31, 2018.[64] Finally, on June 11, 2018, the Parties attended a full day mediation in Miami, Florida, with the Hon. Scott Silverman, (Retired).[65]

After the foregoing investigation and negotiations and exchanges of several drafts, on July 20, 2018, the Parties executed the Agreement including the exhibits. (ECF No. 58-1). The Agreement terms and record confirm that Class relief was negotiated prior to any other piece of the Settlement.[66] In granting preliminary approval, the Court already found that the Settlement was "entered into in good faith [and] free of collusion." (ECF No. 64 at ¶ 4). Through this backdrop of investigation and discovery the Parties were able understand the strengths and weakness of their positions fully by the time they negotiated the Settlement and attended and mediation. The duration and stage of proceedings factors therefore weigh in favor of final approval.

### b. The complexity, expense, and likelihood of success also support approval.

Although the Parties were prepared to try this case, they were well aware that further litigation would be expensive, complex, and time-consuming, and without guarantee of a successful outcome.  Class actions are more complex than other litigation. By their nature, as Judge Posner famously wrote, they "generate[] a host of problems."[67] Adding to this inherent difficulty, multistate product defect class actions are particularly difficult.[68] In this defective products class action, Plaintiffs brought class warranty and other class claims, which often entail thorny issues of privity, varying misrepresentations, opportunity to cure, manifestation of the defect, and pre-suit notice, any one of which defendants might raise to attempt to derail

---

[64] (*Id.*).
[65] (*Id.*).
[66] (ECF No. 58-1 at ¶¶ 52-53) and (ECF No. 68-1 at ¶¶ 21, 24).
[67] *Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 834 F.2d 677, 678 (7th Cir. 1987).
[68] *See, e.g., In re Bridgestone/Firestone, Inc*., 288 F.3d 1012, 1014 (7th Cir. 2002).

certification, especially in a multistate context such as this.[69] Besides these and the inherent difficulty of any class action, multistate product defect class actions also raise difficult issues of standing and representation across state and product model lines.[70] BRP's position has been that the Resonator Defect problem was uncommon and almost exclusively caused by operators running the Subject Watercraft in areas with excessive amount of vegetation and then the operator's failing to follow the manual instructions relating to clearing the obstructions. This potential individual issue posed problems for a contested class case and standing.

Also, trial would likely have taken place in stages over several weeks—first to determine the defect and its extent across approximately 23 models of the Subject Watercraft; then to determine causation and damages across the same model series marketed and sold in four states. If this case had gone to trial, the costs associated with the presentation of engineering experts, technical consultants, the translation of key documents from French to English, and other trial expenses would have been substantial. If Plaintiffs were successful, these expenses could have ultimately been borne by the Class.[71] There is also a strong likelihood that the losing party would take an appeal, further delaying recovery for the Class.[72]

Accordingly, even if Plaintiffs were ultimately to prevail in the Action (which Defendant vigorously contests), that success would bear fruit for the Class only after years of trial and appellate proceedings and the expenditure of millions of dollars in both legal fees and expenses by both sides. By contrast, the settlement Agreement provides the Settlement Class with certainty of

---

[69] (ECF No. 68-5 at ¶ 27); *see also Hummel v. Tamko Bldg. Products, Inc.*, 303 F. Supp. 3d 1288, 1298 (M.D. Fla. 2017); *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1238 (11th Cir. 2016).
[70] *See* (ECF No. 45 at 13-15); *see also In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012.
[71] *See Francisco,* 2008 WL 649124, at *5.
[72] *See Lipuma*, 406 F. Supp. 2d at 1323.

result and specific, readily attainable benefits now.[73] By settling this action, the parties have shortened what would have been a very hard-fought and exhausting period of time, which, at best, might have ended with a decision similar to the terms of this settlement" or potentially denied any relief and achieved no benefit for to the approximately 40,000 Class Members.[74] The complexities, expenses, and likelihood-of-success factors therefore support final approval.

> **c. The Settlement provides concrete, substantial recovery for the Class, which supports final approval.**

Perhaps no better indicator of a settlement's fairness exists than the relief it provides to the Class. Achievement of any relief in the case, as noted above, involves numerous practical, economic, and legal impediments. In this light, "[c]ounsel's conclusions that the Settlement is fair, adequate and reasonable provides strong evidence that the settlement merits the Court's approval."[75] Counsel for the Parties are experienced in class litigation.[76] In their view, the Settlement Agreement secures a significant result for approximately 40,000 Settlement Class Members in four states.[77]

The Settlement's terms bear this out: The Settlement achieves multiple objectives, providing Class Members comprehensive substantive relief specifically tailored to the bases and goals of the Action, supporting final approval. *First*, as to those Class Members who had suffered the manifestation of the alleged Resonator Defect, the Settlement provides full relief in the form of 100% monetary reimbursement for any out-of-pocket repairs and towing costs incurred by such Class Members as a result of this alleged defect. (ECF No. 58-1 at ¶ 43.a.). *Second*, as to any Class

---

[73] *Id.* at 1324 (approving settlement that would "'alleviate the need for judicial exploration of these complex subjects, reduce litigation cost, and eliminate the significant risk that individual claimants might recover nothing'") (citation omitted).

[74] *See Behrens*, 118 F.R.D. at 543.

[75] *Francisco,* 2008 WL 649124, 12 (giving "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation") (citations omitted).

[76] *See* (ECF No. 68 at 14-15 of 22).

[77] (ECF 58-2 at 18-19, 72 of 84).

Members who had suffered the manifestation of the alleged Resonator Defect but for whatever reason had yet to make the necessary repairs to the Subject Watercraft stemming from such defect, Class Counsel sought to provide those Class Members with the opportunity to submit their damaged watercraft to an authorized BRP dealer to have any such repairs conducted at the expense of BRP. (ECF No. 58-1 at ¶ 43.b.). *Third*, Class Members who have not yet suffered any manifestation of the alleged Resonator Defect but, as a preventive measure, incurred expense associated with the replacement of the subject Resonator with a different after-market resonator model prior to the execution of the Settlement Agreement, may, within the Claims Period, make a claim to BRP for 100% reimbursement for such expense, which BRP will honor, subject to reasonable Written Documentation of incurred expenses. (ECF No. 58-1 at ¶ 43.c.). *Fourth*, as to those Class Members who have not yet suffered any manifestation of the alleged Resonator Defect, the Settlement ensures that this alleged defect will now be (for the first time) expressly covered under the BRP limited warranty; and that such limited warranty would be automatically extended to 2 years (instead of 1 year) commencing from the Effective Date of the proposed Settlement (defined as the date of a final, non-appealable judgment). (ECF No. 58-1 at ¶ 44). *Fifth*, BRP has provided an additional notice to Class Members advising them of the potential Resonator Defect, what to do if problems should arise, and that claims relating to the potential Resonator Defect will now be covered under warranty for two years from the Effective Date of the Settlement. (ECF No. 58-1 at ¶ 44).   *Sixth*, BRP agreed not use the Resonator in the manufacture of any new watercraft. (ECF No. 58-1 at ¶ 45). And *seventh*, the Settlement in no manner releases any claims for personal injuries, and through it BRP is effectively waiving certain significant defenses such as statute of limitations. (ECF No. 58-1 at ¶ 24). This waiver combined with the extended warranty coverage

ensures that a Class Member who bought the Subject Watercraft perhaps in 2010,[78] will have warranty protection for at least 9-10 years.

**Claims Process.** That Class Members seeking monetary reimbursement are required to make a claim for such relief in no way detracts from this significant relief obtained in the Settlement.[79] The claims process called for under the Settlement is and will be entirely transparent to Class Counsel.[80]   It is common and even inevitable to have a claims process in a defective products case.[81] "Class settlements are rarely self-executing…[c]lass members must usually file claims forms providing details about their claims and other information needed to administer the settlement."   Herr, David, *Manual Complex Lit*. § 21.66, p. 331 (4h Ed.). That is especially true when the Parties have no means of knowing which Class Members have suffered the alleged manifestation of a specific product defect.   "Verification of claims forms by oath or affirmation under 28 U.S.C. § 1746 [are sometimes] required, and it may be appropriate to require substantiation of the claims (e.g., through invoices, confirmations, or brokers' records)."

Significantly, Class Members would have to make such a claim for relief even if the case were ultimately litigated through trial. Because the Resonator issue was never deemed to be a covered warranty item in the first place, and coverage was often denied at the dealership level, BRP does not have any reliable records of the number of instances where the alleged Resonator issue has manifested, the magnitude of the problem, or the identities of all Class Members who

---

[78] *See* (ECF No. 58-1 at ¶ 28) (Subject Watercraft including 2010 models).
[79] *See Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 (11th Cir. 2015) (noting "the use of a claims process is not inherently suspect"); *see also Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 696 (S.D. Fla. 2014) ("Numerous Courts in this district have required claims forms to be submitted by class members.").
[80] (ECF No. 58-1 at ¶¶ 48-49).
[81] *Id.* (citing 4 William B. Rubenstein, Newberg on Class Actions § 12:18 (5th ed.2011) (noting that "a claiming process is inevitable" in certain settlements such as those involving "defective consumer products sold over the counter").

suffered a failure.[82]  In short, without a claims process, the Parties would have no idea which Class

Members have suffered this past monetary harm (or the amount of such harm), and therefore could

not reliably provide direct reimbursement to such Class Members.[83]

      In addition, the Settlement claims process has been designed in the simplest and most

efficient manner, allowing Class Members ample time (120 days from the Effective Date) to

submit claims with supporting documentation—either by mail or on-line through the Settlement

web site portal—with an opportunity to "cure" any defective claim submissions.[84] Finally, in

addition to the formal court-issued Notice to class members, the Settlement provides for the

issuance of a Postcard Reminder.[85] The Claims Administrator shall mail the Postcard Reminder

(Exhibit 4 of the Settlement Agreement ), to all Class Members not later than forty-five (45) days

before the expiration of the one hundred and twenty (120) day Claims Period referenced herein,

provided such Class Member has not already submitted a Claim Form.[86] The Postcard Reminder

will notify Class Members that approximately 45 days still remain in the Claims Period within

which they may make a claim for any appropriate relief set forth herein to which they may be

entitled.[87]

      "District courts often grant final approval of class action settlements before the final claims

deadline."[88] When Class Counsel filed the Action, they had no way of knowing the exact number

of Class Members who encountered problems resulting from the Resonator Defect. The goal of

the Settlement was to ensure that 100% of the Class Members would be eligible for relief.   The

---

[82]  *See* (ECF No. 58-2 at 19 of 84).

[83]  *Id.*

[84]  (ECF No. 58-1 at ¶¶ 47).

[85]  (*Id*. at ¶ 59).

[86]  *Id.*

[87]  *Id.*

[88]  *Marty v. Anheuser-Busch Companies, LLC*, 13-CV-23656-JJO, 2015 WL 6391185, at *3
(S.D. Fla. Oct. 22, 2015) (collecting cases).

Settlement does that. The claims deadline will not expire until 120 days after the Effective Date. To date, there have been approximately 193 claims submitted.[89]   The range-of-recovery factor therefore favors final approval.

### d.   The Settlement has been extremely well received, supporting final approval.

Finally, "[i]n determining whether a proposed settlement is fair, reasonable and adequate, the reaction of the class is an[other] important [Bennett] factor."[90]   A low percentage of objections demonstrates the reasonableness of a settlement.[91]   Conversely, a high percentage of objections indicates that a class action settlement may very well not be fair and reasonable. *Id.*[92]   Here, the Court-approved notice program set out a very specific procedure for Class Members to file an objection to the proposed Settlement or to opt out of it. Notice was also provided to government officers under CAFA. Of those groups only two putative Class Members objected, and one opted out from a pool of approximately 40,000 members. Courts have found that such lack of opposition weighs strongly in favor of approving settlement.[93]

The two Class Members who objected essentially voiced the same objection, with no evidence or legal argument. They both wanted some sort of recall and retrofit option. *See* **Exhibit C**.   Plaintiffs and Class Counsel considered this issue and discerned it was not advisable or feasible for several reasons.

---

[89] Claims rates are not are determinative of a settlement's fairness. *See Saccoccio,* 297 F.R.D. 683, 696 (rejecting claims-rate objection noting "courts in this district have approved claims-made settlements where the participation rate was very low"). The fairness analysis focuses rather on the relief made available under the settlement and adequate notice of it.

[90] *Lipuma*, 406 F.Supp.2d 1298, 1324.

[91] *Perez,* 501 F. Supp. 2d 1360, 1381.

[92] *Id.*

[93] *See Cotton*, 559 F.2d at 1331; *Bennett*, 96 F.R.D. at 352-53; *Access Now, Inc.*, No. 00-14017-CIV, 2002 WL 1162422 (S.D. Fla. May 7, 2002) ("The Court notes that in several recent Title III of the ADA class actions in this district which were similarly noticed, the Department of Justice and several state attorneys general filed objections. This has not been the case in this matter. The fact that no objections have been filed strongly favors approval of the settlement.").

*First,* early in the case, Defendant raised cogent arguments and it was a contested issue that this relief was beyond the scope of permissible remedies of the claims pleaded (unjust enrichment, warranty, and FDUTPA) and that it did not warrant that all purchasers be satisfied with its Resonator design -- only that there was no defect in material or workmanship. (ECF No. 19 at 27; ECF No. 33 at 5).   *Second,* to Class Counsels' understanding, any safety issue only occurred when the Resonator intake becomes clogged with weeds and the operator continues to operate the vehicle. To address that concern, the Settlement requires Defendant to warn of this condition by sending notice to all owners that continued operation when the intake is clogged may result in Resonator damage and sinking and how to react to an overheat warning. (ECF No 58-1 at ¶ 45). *Third*, there was no in-house easy replacement to the Resonator.   While it is true that Defendant has discontinued use of the subject Resonator for future models, the only Resonator that will fit on existing units is the subject Resonator.[94]   *Fourth*, while the Resonator Defect in Class Counsels' view is a legitimate problem that merited the litigation and this Settlement, it is not such a wide-spread problem that requires more than a warning and the warranty coverage/reimbursement components the Settlement provides for.   During discovery, Plaintiffs learned that from 2010 to May 2018 there were only 243 warranty claims submitted to Defendant involving the subject Resonator.[95]   Again, Class Counsel do not believe that this necessarily tells the full story because we have no means of accurately knowing how many Class Members were effectively dissuaded from making such a warranty claim at the dealership level.   Nonetheless, it seems likely that under any scenario this would not be a significant number in comparison to the approximate 40,000 members in the Class (roughly 0.5%).

---

[94] *See* excerpts for the Deposition of Andre Fournier at pp. 38-39 attached hereto and incorporated herein as **Exhibit D.**
[95] *Id.* at p. 21.

Simply put, in the negotiation process, Plaintiffs felt the Resonator issue was adequately addressed by combination of the warning notice and providing full compensation for past damages as well as covering the Resonator Defect and any future damage with an extended warranty. This relief makes the eligible Class Members whole.   Again, this was a compromise and it is unreasonable to expect Plaintiffs to achieve a negotiate compromise that obtains everything they might possibly want, in the face of strong defensive arguments that could very well result in Plaintiffs obtaining nothing at all.   The two objections should therefore be overruled, and the Court should find that the reaction of Class Members unquestionably supports final approval of the Settlement.

2.      **Final class certification is warranted.** In their preliminary approval memorandum (ECF No. 58), Plaintiffs set forth the reasons why certification of a settlement class is warranted. Those arguments and citations are incorporated here and do not bear re-iteration.   Suffice it to say that class treatment in a settlement context makes sense.   The fact that the Parties have reached a settlement weighs in favor of a finding that the class mechanism is superior. *See Amchem Products, Inc. v. Windsor*, 521 US 591, 619-20 (1997), ("settlement is relevant to a class certification" and can alleviate manageability concerns that otherwise may arise).   A settlement class makes sense because it gives approximately 40,000 persons notice of the potential Resonator problem.[96] Also, it would make no sense for court after court to construe the same product evidence.[97]   Given the relief made available in the Settlement, a class settlement just plan makes good sense.

---

[96] *See Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 318 (S.D. Fla. 2001) (citation omitted).
[97] *See Fournigault v. Independence One Mortg. Corp*., 234 F.R.D. 641, 648 (N.D. Ill. 2006) (quotation omitted).

**WHEREFORE,** for the foregoing reasons, Plaintiffs and Class Counsel believe they have crafted a settlement that is clearly fair, adequate, and reasonable and should be finally approved, through entry of the attached final judgment.

## SD. Fla. L.R. 7.1(a)(3) Certification

This motion is filed pursuant to a negotiated agreement of the Parties. Under the above-referenced Settlement Agreement and for purposes of settlement only, Defendant does not oppose this Motion.

Dated: November 9, 2018                    Respectfully submitted,

/s/ *Edward H. Zebersky*
Edward H. Zebersky (FBN 908370)
Mark S. Fistos (FBN 909191)
**ZEBERSKY PAYNE, LLP**
110 Southeast 6th Street, Suite 2150
Ft. Lauderdale, FL 33301
ezebersky@zpllp.com; mfistos@zpllp.com
Telephone:   954-989-6333
Facsimile:   954-989-7781

Matthew R. Mendelsohn *(Pro Hac Vice)*
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: 973-228-9898

Richard E. Norman (*Pro Hac Vice*)
R. Martin Weber, Jr. (*Pro Hac Vice*)
**CROWLEY NORMAN, LLP**
3 Riverway, Suite 1775
Houston, Texas 77056
Telephone: 713-651-1771

Britton D. Monts *(Pro Hac Vice)*
**THE MONTS FIRM**
Frost Bank Tower
401 Congress Ave., #1540
Austin, TX 78701
Telephone: 512-474-6092

***Attorneys for Plaintiffs and Putative Class***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 9, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send notification to all attorneys of record.

/s/ *Edward H. Zebersky*
Edward H. Zebersky